OPINION
{¶ 1} Plaintiff-appellant, B.I. Chipping Co. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas in which that court granted summary judgment in favor of defendant-appellee, R.F. Scurlock Co. ("appellee") on appellant's claims.
 {¶ 2} This matter arises out of an April 2, 2001 contract between the two parties ("the contract"), which provided that appellant would perform the clearing and grubbing of trees and underbrush along a portion of U.S. Route 50 in Vinton County, Ohio. The contract was part of a larger undertaking to realign that particular section of the highway, which appellee was obligated to accomplish pursuant to a separate contract with the Ohio Department of Transportation ("ODOT"). The stated contract price for appellant's portion of the work was $86,000.
 {¶ 3} The specifications for purposes of bidding represented that aerial utility lines owned by American Electric Power and Verizon would be relocated by March 14, 2001, before work was to begin. The contract contained several other pertinent provisions. Section 3 provides:
The Subcontractor shall be bound to the Contractor by the terms and conditions of all documents forming a part of the Principal Contract, and to assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the Principal Contract toward the Owner, insofar as they are applicable to this particular Subcontract * * *.
 {¶ 4} Section 8 provides:
The Contractor shall not be responsible to the Subcontractor for any loss, damage or delay of any nature caused by the Owner or Contractor or any other subcontractor or materialman other than for such amounts as the Owner or such other subcontractor or materialman shall be liable to and shall pay to the Contractor, including any amounts found due under any disputes clause of the Principal Contract. In any case of any dispute between the Subcontractor and the Contractor involving the Owner, Subcontractor agrees to be bound to the Contractor to the same extent that the Contractor is bound to the Owner by the terms of the Principal Contract and by any and all decisions or determinations made thereunder by the party or board so authorized in the Principal Contract or by any court of competent jurisdiction whether or not the Subcontractor is a party to such proceeding. The Contractor agrees to the Owner all Subcontractor's claims (submitted in writing by the Subcontractor to the Contractor) involving the Owner whenever the Contractor is permitted to do so by the terms of the Principal Contract and to further invoke, on behalf of the Subcontractor, those provisions in the Principal contract for determining disputes.
 {¶ 5} Section 14 provides:
The Subcontractor agrees to perform and coordinate his work with that of the Contractor and other subcontractors to the best interests of the work as a whole, as determined by Contractor, and shall have no claim for extra compensation on account of delays, interference or hindrance caused by the Contractor or other subcontractors in the performance of their respective items of work.
 {¶ 6} It is undisputed that when appellant arrived on site to begin work, Verizon's aerial utility lines had not been removed or relocated. It is also undisputed that Verizon was obligated, through an agreement with ODOT, to remove or relocate the lines during construction. Appellant began work nonetheless, but incurred expenses beyond those originally forecast for cost items such as extra labor and equipment rental. According to appellant, its anticipated costs for the project had doubled by the time the project was complete. Appellant claims that appellee directed its work, including directing appellant to demobilize and remobilize at various points along the work route because of interference from the utility lines. Appellee claims that appellant knew, prior to commencing work, that the utility lines had not been relocated, and simply made a business decision to complete the work anyway.
 {¶ 7} After completion of the project, in February 2002, appellee sent a claim package to ODOT, in which it requested additional compensation for the increased costs incurred by both appellant and appellee due to Verizon's failure to relocate its utility lines. ODOT indicated that it viewed the claim as meritless, but ultimately agreed to settle the claim for $25,000. Shortly thereafter, appellant wrote a letter to appellee in which appellant advised that appellee possessed no authority to settle appellant's claims on appellant's behalf, and insisted that, "we will not be bound by any settlement that Scurlock agrees upon with ODOT."
 {¶ 8} Upon its receipt of the $25,000 settlement from ODOT, appellee forwarded $10,000 of the funds to appellant, but appellant refused to accept the check. Appellee requested that ODOT reopen the claim for cost increases, whereupon appellant presented its claim directly to ODOT. ODOT determined that appellant was not entitled to any additional compensation.
 {¶ 9} On October 22, 2002, appellant commenced this action against appellee, asserting claims for breach of contract, unjust enrichment, and breach of an implied warranty to provide a site free from obstructive utility lines. Appellant sought total damages in the amount of $88,876.22. Both parties moved for summary judgment. The trial court denied appellant's motion and granted appellee's motion.
 {¶ 10} The court found that Sections 8 and 14 of the contract precluded appellant's claim for its delay-related damages. The court rejected appellant's arguments that these provisions were unenforceable pursuant to R.C. 4113.62(C), which provides:
(1) Any provision of a construction contract, agreement, or understanding, or specification or other documentation that is made a part of a construction contract, agreement, or understanding, that waives or precludes liability for delay during the course of a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, or that waives any other remedy for a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, is void and unenforceable as against public policy.
(2) Any provision of a construction subcontract, agreement, or understanding, or specification or other documentation that is made part of a construction subcontract, agreement, or understanding, that waives or precludes liability for delay during the course of a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, or that waives any other remedy for a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, is void and unenforceable as against public policy.
 {¶ 11} The trial court found that because the contract allows appellant to recover for delays in the amount that appellee receives through the ODOT claims process, and thus does not preclude all liability for delays, R.C. 4113.62(C) does not apply and does not render any provision of the contract unenforceable.
 {¶ 12} The trial court also rejected appellant's argument that, even if the delay-related clauses are enforceable, they cannot be enforced in this particular instance because the parties did not contemplate the cause of the delay at the time of contracting. The court reiterated its view that the contract does not contain any no-damage-for-delay clauses (since some damages were available through the ODOT claim process); thus, according to the court, the judicial exception to such clauses, for situations in which delays were not contemplated at the time of contracting, did not apply.
 {¶ 13} The court summarized its findings regarding the breach of contract claims as follows:
Upon review of the clear and unambiguous terms of the Subcontract, the Court finds that the Plaintiff's claims are barred by the express terms of the Contract. Under § 8 of the Subcontract, the Defendant is liable for the Plaintiff's delays only to the extent that ODOT paid the Defendant on the Plaintiff's claims. It is undisputed that the Defendant was not responsible for removing and/or relocating the utilities lines on the Project. The Subcontract does not contain any provision which mandates that the utility lines were to be relocated before the Plaintiff was to begin its work. Moreover, pursuant to § 3 of the Subcontract, the Plaintiff was bound by any alterations to the contract between the Defendant and ODOT.
(Decision Granting Defendant's Motion for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion to Strike, at 9-10.)
 {¶ 14} The trial court also rejected appellant's argument that it is not bound by appellee's settlement with ODOT because appellee failed to keep it informed throughout the claims process, and because appellant wrote a letter informing appellee that it had no authority to settle with ODOT on appellant's behalf. The court ruled that Section 8 of the contract clearly and unambiguously binds appellant to the terms of any settlement with ODOT, notwithstanding any of appellant's protestations to the contrary made during the settlement process.
 {¶ 15} The court rejected appellant's claim for unjust enrichment because it found that the claim is based on performance of no more work than that specified in the contract. The court rejected appellant's argument that it performed work beyond the scope of the contract, noting that "[t]he fact that Defendant may have directed the Plaintiff to complete its work in a particular fashion is not evidence of unjust enrichment, as the Subcontract provides that the coordination of work will be determined by the Defendant." (Id. at 12.)
 {¶ 16} Appellant pursued a timely appeal from the trial court's judgment, and asserts four assignments of error for our review, as follows:
I. The Trial Court Erred In Granting Summary Judgment In Favor of Defendant/Appellee R.F. Scurlock Company In Finding That Ohio Revised Code Section 4113.62 Was Inapplicable To The Case.
II. The Trial Court Erred In Granting Summary Judgment In Favor Of Defendant/Appellee R.F. Scurlock Company In Finding That Appellant's Claims Are Barred By The Express Terms Of The Contract Between The Parties.
III. Trial Court Erred In Granting Summary Judgment In Favor Of Defendant/Appellee R.F. Scurlock Company In Finding That Appellant's Claims Are Bound By The Terms Of The Appellee's Prior Settlement With The Ohio Department Of Transportation.
IV. The Trial Court Erred In Granting Summary Judgment In Favor Of Defendant/Appellee R.F. Scurlock Company In Finding That Appellant Cannot Recover Under An Unjust Enrichment Claim.
 {¶ 17} We begin by recalling the standards applicable to our review of a trial court's grant of summary judgment. We review the trial court's grant of summary judgment de novo. CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Rels. Bd.,78 Ohio St.3d 181, 183, 677 N.E.2d 343. We construe the facts gleaned from the record in a light most favorable to appellant, as is appropriate on review of a summary judgment. We review questions of law de novo. Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147, 593 N.E.2d 286.
 {¶ 18} In support of appellant's first assignment of error it argues that the trial court incorrectly determined that R.C.4113.62(C) does not invalidate the provisions of the contract that bar recovery of delay damages. Appellant contends that the contract's limitation on recovery of such damages to amounts recovered from ODOT "leaves B.I. Chipping's claims dependent on a host of factors, including pure luck, to recover its damages and has the effect of essentially waiving all of B.I. Chipping's claims." (Brief of Appellant, at 11.)
 {¶ 19} Appellant urges this court to examine Sections 8 and 14 of the contract in isolation, and to hold that the language of these sections is barred by the unambiguous terms of R.C.4113.62(C). However, "a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."Foster Wheeler Enviresponse, Inc. v. Franklin Co. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361-362,678 N.E.2d 519. In the present case, Section 8 of the contract unambiguously limits appellant's recovery of damages for "any loss, damage or delay of any nature caused by the Owner or Contractor * * * [to] such amounts as the Owner or such other [party responsible for the loss, damage or delay] shall be liable to and shall pay to the Contractor * * *.
 {¶ 20} Appellant argues that this "has the effect of essentially waiving all of B.I. Chipping's claims." (Brief of Appellant, 11.) But "[i]t is not the responsibility or function of th[e] court to rewrite the parties' contract in order to provide for a more equitable result." Id. at 362. Appellant agreed to accept only those delay-related damages that were actually recovered from ODOT through its claims process. This does not bring the contract within the class of contracts that contain clauses that "waive or preclude liability for delay" and are prohibited by R.C. 4113.62(C).
 {¶ 21} The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. In this case, appellant agreed to seek its damages for delay through the ODOT claims process, and agreed to allow appellee to act on its behalf in that process. This limitation in the agreement does not render the contract unenforceable by virtue of R.C. 4113.62(C). Accordingly, the trial court correctly determined that the foregoing statute does not apply to the contract, and that the contract's provisions limiting damages for delay are enforceable. For these reasons, appellant's first assignment of error is overruled.
 {¶ 22} In support of its second assignment of error, appellant argues that because the parties did not contemplate the cause of the delay — the presence of overhead utility lines during work — at the time of contracting, the "no damage for delay" clauses in the contract are unenforceable. We have held that an otherwise enforceable no-damage-for-delay clause will not be enforced when conditions arise which are not within the contemplation of the parties at the time the contract was made. See Nix, Inc. v. City of Columbus (1959), 111 Ohio App. 133, 14 O.O.2d 44, 171 N.E.2d 197.
 {¶ 23} The trial court did not evaluate whether the parties in this case contemplated the cause of the delay because the court found that the contract as a whole did not preclude damages for delay. We agree. The contract in Nix contained a provision prohibiting recovery of all damages for delay, which, as discussed hereinabove, is not the circumstance presented in this case. Appellant's recovery of delay damages is limited to that which is actually recovered from ODOT; it is not waived or precluded. Thus, the trial court correctly concluded that it did not need to address the scope of delays contemplated by the parties at the time of contracting. Finding no merit therein, we overrule appellant's second assignment of error.
 {¶ 24} In support of its third assignment of error, appellant argues that the trial court erred in finding that appellant is bound by appellee's settlement with ODOT. It repackages the arguments it made under its first two assignments of error, and argues that its right to recovery of delay damages should not be dependent upon appellee's tenacity and negotiating skills.[1] However, as we discussed earlier, this is precisely the arrangement to which appellant agreed when it signed the contract.
 {¶ 25} "The right of private contract is a constitutional right that it is the duty of the court to guard zealously. The terms and conditions are written into a contract for the purpose of being observed by the parties thereto. Courts must not make contracts for parties, nor exercise a guardianship over contracting parties * * *." Farmers Natl. Bank v. Delaware Ins.Co. (1911), 83 Ohio St. 309, 329-330, 94 N.E. 834. Accordingly, we will not undo the contract simply because appellant now regrets having entered into it. For this reason, appellant's third assignment of error is overruled.
 {¶ 26} In support of its fourth assignment of error, appellant argues that the court erroneously awarded summary judgment to appellee on appellant's claim for unjust enrichment. "Quantum meruit is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered." Aultman Hospital Assoc.v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 55,544 N.E.2d 920. Appellant appears to concede that the ultimate tasks it accomplished on the job — clearing and grubbing of trees — were no different from or numerous than the tasks within its original scope of work under the contract. There is also no dispute that appellee paid appellant the contract price of $86,000.
 {¶ 27} But appellant emphasizes that, in order to complete its tasks it was forced to work out of sequence, rent additional equipment, demobilize and remobilize frequently and "essentially" perform some of its work twice, all of which, appellant contends, was outside the scope of work specified in the contract. But, as appellee points out, the contract does not contain provisions setting forth a specific sequence of the work, a progress schedule or a completion date. However, Section 14 of the contract does specify that appellant agreed to "perform and coordinate his work with that of the Contractor and other subcontractors to the best interests of the work as a whole, as determined by the Contractor * * *."
 {¶ 28} The record contains no evidence that appellant completed tasks that were outside of the scope of work specified in the contract. Any claim for additional labor and equipment costs occasioned by the presence of aerial utility lines is properly subsumed within the general category of delay damages, which are, by the plain language of the contract, limited by the amount thereof that appellee actually recovered from ODOT. Accordingly, appellant's fourth assignment of error is not well-taken and is overruled.
 {¶ 29} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt and Christley, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
[1] Appellant also argues that appellee failed to correctly follow ODOT's administrative claims procedures. However, appellant failed to raise this argument below in its memorandum in opposition to appellee's motion for summary judgment; therefore, we will not address it. See Stores Realty Co. v. Cityof Cleveland (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123,322 N.E.2d 629.