[Cite as *Kahler v. Eytcheson*, 2012-Ohio-208.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

EMIL KAHLER, III                                    :

     Plaintiff-Appellee                          :        C.A. CASE NO.    23523

v.                                                          :        T.C. NO.    07CV3564

KELLY WAYNE EYTCHESON               :           (Civil appeal from
                                                                      Common Pleas Court)
     Defendant-Appellant                    :

                                                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____20th____ day of ___January___, 2012.

. . . . . . . . . .

THOMAS W. KENDO, JR., Atty. Reg. No. 0058548, 7925 Paragon Road, Dayton, Ohio 45459
     Attorney for Plaintiff-Appellee

KELLY WAYNE EYTCHESON, P. O. Box 750036, Dayton, Ohio 45475
     Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Kelly Wayne Eytcheson (also known as Eytcheson, Kelly Wayne) appeals from a judgment of the Montgomery County Court of Common Pleas, which found that Eytcheson had breached his agreement with Emil Kahler and awarded unpaid back rent to

Kahler. In so holding, the trial court concluded that parties' agreement was a lease with an option for Eytcheson to purchase Kahler's real property, rather than a sales contract.

{¶ 2} For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3} The underlying facts, as found by the magistrate and adopted by the trial court, are as follows:

The parties were previously friends who had met at church. In 2004, Defendant Eytcheson made contact with Plaintiff Kahler about purchasing Kahler's home which was listed for sale. After discussing it, it was determined that Eytcheson was unable to afford the purchase of the home. The parties agreed that Eytcheson would lease the home until he could afford to purchase it. Eytcheson typed up an agreement himself and the parties signed it the next day, March 29, 2004. The lease payment was for less than Plaintiff's mortgage payment. However, Plaintiff accepted this as he felt compassion for the Defendant and his family regarding their financial situation.

The document signed by the parties is titled Memorandum of Terms of Agreement of Sale. It contains the following relevant terms [which are paraphrased as follows]:

1) The property is considered sold effective June 1, 2004 and at the time of Transfer of Deed (at a time yet to be determined), any and all encumbrances pertaining to said property will be satisfied by Sellers.

3

[The magistrate's decision did not include a paragraph 2.]

3) A Security Deposit in the amount of $750.00 will be made to the Sellers prior to possession by the Buyers. "Should Buyers choose not to exercise their right to Transfer of Deed, the Security Deposit will be returned to the Buyers..."

4) Payments will commence 5 June 2004 and will be made to the Sellers on the 5th of each month.

5) The initial payment amount shall be $750.00 per month. Payments were to increase each subsequent year at the rate of 3% until the "maximum payment amount" is achieved, that being $1,200.00 per month.

6) Buyers retain the right to the Transfer of Deed which may be made at any time during this Agreement period upon payment of the amount remaining on Seller's mortgage on the property at the time of such Transfer of Deed. Should Buyers choose not to exercise their right to the Transfer of Deed, possession will be surrendered back to the Sellers. Sellers would then have the right to retain all monies paid to date at that time.

7) Sellers will maintain as a minimum, at their expense, an insurance policy for the property.

8) Sellers will be responsible for any repairs of major systems.

9) In the event that the Buyers have not previously execute[d] their right to Transfer of Deed, Sellers upon payment in full of their present mortgage will execute a Transfer of Deed to the Buyers upon payment of

$1.00 to the Sellers by the Buyers. This will constitute full payment by the Buyers.

This Agreement is marked as Plaintiff's Exhibit 1. In March 2007, Plaintiff received notice from his insurance carrier that his homeowners policy on the subject property would not be renewed. The nonrenewal was due to the commercial business Defendant operated in the home. Defendant does some graphic design and embroidery of T-shirts and sells them to the public. The insurance then lapsed in June 2007. The mortgage company began charging Plaintiff for forced insurance at a much higher rate. Plaintiff attempted to procure additional insurance but could not due to the commercial liability issues associated with Defendant's business. Defendant then obtained insurance and began deducting the premium amounts from the lease payments.

The monthly payment due to Plaintiff at the time of the alleged breach was $819.55 per month. In August 2007, the Plaintiff did not receive the rent payment from the Defendant. Defendant then began sending money orders for partial rent payments to Plaintiff's counsel. These money orders were not cashed.

{¶ 4} In June 2006, Kahler brought a forcible entry and detainer action against Eytcheson in Kettering Municipal Court. (Case No. 06 CVG 2862.) Kahler alleged that Eytcheson was a tenant under "an agreement providing for the lease of the premises and the option by Tenant to purchase the premises." Kahler claimed that Eytcheson was operating a

home-based business in violation of zoning regulations, and he sought restitution of the premises. This case was dismissed, pursuant to Civ.R. 41(A).

{¶ 5} In September 2006, Kahler filed a second complaint in the Kettering Municipal Court, seeking termination of the "Sale Agreement" between the parties, restitution of the property, and attorney fees and costs. (Case No. 06 CVF 3389.) He claimed that Eytcheson had violated the terms of the agreement by operating a business from the residence. Eytcheson denied the allegation and raised several affirmative defenses. He also claimed that Kahler had breached the agreement and sought a declaratory judgment "that the Sale Agreement by and between Plaintiff and Defendant is valid and binding and that Plaintiff is legally bound and required to perform in accordance with its terms and conditions." Eytcheson sought damages, attorney fees, and punitive damages. By agreement of the parties, the case was subsequently transferred to the Montgomery County Common Pleas Court. (*Kahler v. Eytcheson*, Montgomery C.P. No. 2007 CV 3564.)

{¶ 6} On August 24, 2007, Kahler filed a third action against Eytcheson in the Kettering Municipal Court, asserting forcible entry and detainer, unpaid rent, possible unpaid utilities, and possible damage to the property. (Case No. 07 CVG 3348.) Kahler claimed that Eytcheson was a tenant and that he had been given the required three-day notice to vacate. Eytcheson denied the allegations, including the allegation that he was a tenant. Eytcheson asserted that the parties' agreement was a contract of sale, not a lease agreement. The parties agreed to transfer the case to common pleas court (Montgomery C.P. No. 2007 CV 8278) and that the matter be consolidated with Case No. 2007 CV 3564.

{¶ 7} After a trial before a magistrate, the magistrate found that the parties'

agreement did not constitute either a land contract or a contract to purchase real estate, and she concluded that the agreement was a lease with an option to purchase Kahler's property. The magistrate further found that Eytcheson had breached the lease by non-payment of rent. She awarded $1,028.55 to Kahler for unpaid rent for the months of August through December, less any amounts paid by Eytcheson for December rent. Finally, the magistrate found Eytcheson's counterclaim "to be without merit."

{¶ 8} Eytcheson objected to the magistrate's decision. As summarized by the trial court, he contended that "the pleadings and language of the agreement, as well as Plaintiff's conduct, demonstrate that the agreement between the parties was for the sale of the subject property. Defendant argues that Plaintiff breached the agreement by not providing insurance, and his August, 2007 payment was returned by the post office as undeliverable."

{¶ 9} On June 17, 2009, the trial court overruled Eytcheson's objections. The court stated that it had "independently reviewed the magistrate's conclusions, considered the parties' arguments, and reviewed the trial transcript." After such a review, it agreed with the magistrate that the agreement was "best characterized as a lease with option to purchase, and Defendant is in default of payment upon the lease." The trial court affirmed the magistrate's decision in all respects, except that it ordered Eytcheson to pay all back rent owed.

{¶ 10} Eytcheson appeals from the trial court's decision, raising fifteen assignments of error. We will address them in a manner that facilitates our analysis.

II.

{¶ 11} In Eytcheson's first and second assignments of error, he claims that the

magistrate improperly proceeded to trial without having all of the underlying documents available and that the magistrate and trial court failed to consider the entire record before rendering their decisions. In his third assignment of error, Eytcheson claims that the magistrate's and trial court's rulings were not fair and impartial, because their decisions were not "based upon the whole picture of the case." Eytcheson emphasizes that the Kettering Municipal Court cases were not consolidated until the trial court issued a nunc pro tunc entry on August 21, 2009, two months after the trial court's judgment.

{¶ 12} In its decision and entry overruling Eytcheson's objections and adopting the magistrate's decision, the trial court set forth the procedural history of the case and noted that the action stemmed from three Kettering Municipal Court cases. The court indicated that the first action had been dismissed and the two subsequent actions had been transferred to the common pleas court. The trial court stated that case number 07-CVG-3348 (the third municipal court case) was "combined with case 07-CV-3564."

{¶ 13} After the June 2009 decision was rendered, the trial court apparently discovered that the two transferred cases had not been formally consolidated. In the trial court's nunc pro tunc entry, the court stated:

> In its decision of June 17, 2009, this Court indicated that Kettering Municipal Court case 07-CVG-03348 was combined with this action. Upon review, that municipal court case was opened as a separate case, number 07-CV-8278, which is hereby ordered to be consolidated with the instant action, as both cases have identical parties and arise from the same transaction or occurrence. Civ. R. 42(A)(1).

Each of three separate Kettering Municipal Court cases, which underlie the dispute between the parties, were considered by the Court in its independent review of the Magistrate's decision. This Court's decision in case 07-CV-3564 decided all issues raised in case 07-CV-8278. As such, as a result of this consolidation, the notice of appeal ought to include 07-CV-8278, record of which shall be included with the record on appeal. Moreover, the Court took judicial notice of the lawsuits in Kettering Municipal Court in reaching its decision, and copies of the filings in those cases that were considered by this Court but omitted from the materials transferred from municipal court, are attached as an exhibit to this entry.

{¶ 14} We see no indication that the trial court failed to consider all of the Kettering Municipal Court filings in all three underlying cases in reviewing the magistrate's decision and rendering its June 17, 2009 decision. We also find no basis for Eytcheson's assertion that the magistrate's and trial court's decisions were not fair and impartial.

{¶ 15} The first, second, and third assignments of error are overruled.

III.

{¶ 16} In his ninth and tenth assignments of error, Eytcheson claims that the magistrate and trial court erred in crediting Kahler's testimony. Eytcheson emphasizes that Kahler's pleadings in the municipal court were contradictory, and he argues that the magistrate and the trial court should have found Kahler's testimony unbelievable based on the municipal court pleadings.

{¶ 17} Eytcheson's argument appears to be based on a misunderstanding of the

doctrine of judicial estoppel. "The doctrine of judicial estoppel 'forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."'" *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998), in turn quoting *Teledyne Industries, Inc. v. Natl. Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir.1990). "'"The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court.'" *Id.*, quoting *Griffith*, 135 F.3d at 380.

{¶ 18} Kahler asserted in his first municipal court complaint that Eytcheson was a tenant under "an agreement providing for the lease of the premises and the option by Tenant to purchase the premises." This complaint was voluntarily dismissed. Kahler's second complaint sought termination of the "Sale Agreement." Kahler's third complaint alleged that Eytcheson was a tenant and that he had failed to pay rent, as required by their agreement.

{¶ 19} Nothing in the Rules of Civil Procedure precluded Kahler from asserting inconsistent theories for relief upon the filing of his second and third complaints. Indeed, Kahler could have raised inconsistent theories in the same complaint. "Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims, and states, in part, '(w)hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.'" *Dever v. Lucas*, 174 Ohio App.3d 725, 2008-Ohio-332, 884 N.E.2d 641, ¶ 36, quoting *Iacono v. Anderson Concrete*

*Corp.*, 42 Ohio St.2d 88, 92, 326 N.E.2d 267 (1975).

{¶ 20} Kahler had not prevailed on any particular theory in a prior action prior to filing his second and third complaints; thus, judicial estoppel did not apply to those complaints. In addition, none of allegations in Kahler's complaints was made under oath. Accordingly, they did not constitute contradictory sworn statements by Kahler. The magistrate and the trial court were free to assess Kahler's credibility based on his testimony at trial, without regard to his inconsistent theories for relief in his complaints.

{¶ 21} The ninth and tenth assignments of error are overruled.

IV.

{¶ 22} Eytcheson's fourth, sixth, seventh, and eleventh assignments of error each challenge the trial court's conclusion that the agreement between the parties constituted a lease with an option to purchase Kahler's property. Eytcheson's fifth, eighth, and fourteenth assignments of error claim, in essence, that the trial court erred in failing to enforce the parties' agreement as a sales contract, and that by failing to do so, the trial court violated his constitutional right to contract.

{¶ 23} In reviewing Eytcheson's assigned errors on appeal, we are confined to the record that was before the trial court as defined in App. R. 9(A).[1] *See Lamar v. Marbury*, 69 Ohio St.2d 274, 277, 431 N.E.2d 1028 (1982). App. R. 9(A) provides that the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and

---

[1]Because we are limited to the record before the trial court, we cannot consider any of the evidence attached to Eytcheson's appellate brief that was not already part of the record.

journal entries prepared by the clerk of the trial court." At the time the record was filed in this case, App.R. 9(A) further provided that "[w]hen the transcript of proceedings is in the videotape medium, counsel *shall type or print those portions of such transcript necessary for the court to determine the questions presented, certify their accuracy, and append such copy of the portions of the transcripts to their briefs.*" (Emphasis added).

{¶ 24} Under App.R. 9(B), the appellant has the duty to provide a transcript for appellate review. Former App.R. 9(B) stated, in part, that "the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record." The record contains a CD-ROM of the trial; no written transcript was filed.

{¶ 25} Absent a written transcript, we cannot speculate what the testimony was at trial, and we are constrained to presume the regularity of the proceedings below unless the limited record for our review affirmatively demonstrates error. *Banks v. Regan*, 2d Dist. Montgomery No. 21929, 2008-Ohio-188, ¶ 2; *State v. Like,* 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, ¶ 33. In this instance, we focus primarily upon the exhibits presented by the parties during the trial.

{¶ 26} From the record before us, we find nothing that affirmatively demonstrates error. A plain reading of the parties' agreement supports the trial court's conclusion that the agreement constitutes a lease with an option to purchase the property. Eytcheson and his wife were granted possession of the property on June 1, 2004, and they were required to pay a "security deposit of $750" prior to that date. The Eytchesons were to make monthly payments of a specific amount, which would increase until it reached $1,200 per month.

The Kahlers were responsible for the repair of "major systems," such as the furnace, air conditioner, and water heater, whereas the Eytchesons were responsible for maintenance of those systems and other minor repairs to the home. The Kahlers were required to provide insurance for the full value of the property. Although not dispositive, these terms suggest that the agreement created a landlord-tenant relationship.

{¶ 27} Eytcheson emphasizes that the parties referred to themselves as "Buyers" and "Sellers." Although informative, the use of such labels is not dispositive of the relationship between the parties, particularly when the contract contemplates that the relationship may change from landlord-tenant to buyer-seller if an option to purchase is exercised. The provision in paragraph one that the property "is sold effective 1 June 2004 by the Sellers to the Buyers" also does not definitively establish that the parties' agreement was a sales contract; rather, that paragraph, read together with other portions of the parties' agreement, supports the magistrate's and trial court's conclusion that the agreement was ambiguous.

{¶ 28} Significantly, the contract at issue did not obligate the Eytchesons to purchase the property from the Kahlers. Rather, the agreement provided the Eytchesons with a "right to Transfer of Deed," which they could choose to exercise – or not – at their discretion. Paragraph six of the agreement provided: "Buyers retain the right to the Transfer of Deed which may be made at any time during this Agreement period upon payment of the amount remaining on the Sellers' mortgage on the property at the time of such Transfer of Deed. Should Buyers choose not to exercise their right to the Transfer of Deed, possession will be surrendered back to the Sellers. Sellers would then have the right to retain all monies paid to date at that time. Only the Security Deposit will be returned to the Buyers after

deduction for any necessary repairs (if any) to bring the property into reasonable living condition, reasonable wear and tear accepted." Upon payment in full of their mortgage, the Kahlers were required to transfer the deed to the Eytchesons upon the Eytchesons' payment of $1. The agreement thus provided the Eytchesons with an option – not an obligation – to purchase the property from the Kahlers.

{¶ 29} Even without a written transcript, it is obvious from Eytcheson's filings that he believes a sale occurred in June 2004 and that he intended to exercise his "right to Transfer of Deed," i.e., to complete the purchase of the property from the Kahlers. Nevertheless, Eytcheson's subjective intent to complete the purchase of the property did not convert an agreement granting him possession with an option to buy into a sales contract. Based on the record before us, the trial court did not err in concluding that the parties' agreement was a lease with an option to purchase real estate and not a sales contract.

{¶ 30} Eytcheson asserts that the trial court's interpretation of the parties' agreement violated his constitutional right to contract. "The right of private contract is a constitutional right that it is the duty of the court to guard zealously. The terms and conditions are written into a contract for the purpose of being observed by the parties thereto. Courts must not make contracts for parties, nor exercise a guardianship over contracting parties ***." *Farmers' Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 329-330, 94 N.E. 834 (1911), quoted by *B.I. Chipping Co. v. R.F. Scurlock Co.*, 10th Dist. Franklin No. 04AP-1219, 2005-Ohio-6748, ¶ 25.

{¶ 31} The primary role of the court in reviewing a contract is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio

St.3d 270, 273, 714 N.E.2d 898 (1999). The interpretation of a contract is a question of law. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). As stated above, we find no error in the trial court's interpretation of the parties' agreement. Accordingly, the trial court did not violate Eytcheson's constitutional right to contract when it concluded that the agreement was a lease with an option to purchase Kahler's property, and not a sales contract.

{¶ 32} Eytcheson's fourth, fifth, sixth, seventh, eighth, eleventh, and fourteenth assignments of error are overruled.

V.

{¶ 33} In Eytcheson's twelfth and fifteenth assignments of error, he claims that the trial court erred in failing to find that Kahler breached the parties' agreement and to require Kahler to perform his contractual duties.

{¶ 34} In the absence of a written transcript, we cannot speculate what the testimony was at trial. Consequently, we cannot review the trial court's explicit factual finding that Eytcheson breached the agreement by non-payment of rent and the trial court's implicit finding that Kahler did not breach the agreement. Instead, we are constrained to presume the regularity of the proceedings and affirm the trial court's findings.

{¶ 35} The twelfth and fifteenth assignments of error are overruled.

VI.

{¶ 36} In his thirteenth assignment of error, Eytcheson claims that he was not served with several motions, entries, and the final judgment, in violation of his right to due process.

The specific instances are listed in Appendix 21 of his appellate brief.

{¶ 37} "Due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I, Ohio Constitution, requires that every party to an action be afforded 'a reasonable opportunity to be heard after a reasonable notice of such hearing.'" *Fekete v. Fekete*, 8th Dist. Cuyahoga No. 74340, 2000 WL 218386, \*5 (Feb. 24, 2000), quoting *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn*., 28 Ohio St.3d 118, 125, 502 N.E.2d 599 (1986).

{¶ 38} The record substantiates Eytcheson's contention that some court entries and filings by Kahler were sent either to Eytcheson's former attorney or to his residential address (the property at issue), rather than to the Kettering post office box that Eytcheson listed on his own filings. When Eytcheson began using a Dayton post office box, it appears that he attempted to inform the court of this change by placing the Dayton address in the caption of his filings. We see no indication that the trial court or Kahler's counsel noticed this change, nor could they be expected to. "A party bears the burden of formally notifying the court of a change of address; the clerk is not charged with the duty of perusing the record to ensure that a party's mailing address has not changed." *Robb v. Smallwood*, 165 Ohio App.3d 385, 2005-Ohio-5863, 846 N.E.2d 878, ¶ 11.

{¶ 39} In April 2008, Eytcheson expressly told the court of the Dayton address on page 12 (the last page) of his "Second Objections to Magistrate's Decision File 10 Jan 2008 and Request for read-only CD-ROM of Transcript." Since then, the court has sent some entries to his current Dayton address, but others have been sent to his residential address or his former Kettering post office box.

{¶ 40} We do not minimize the importance of proper notification to parties of court filings. Nevertheless, it is obvious that Eytcheson was an active participant in this litigation, and he received actual notice of the trial court's entries and Kahler's motions and memoranda. Eytcheson was present at and participated in the trial before the magistrate. Eytcheson filed timely objections to the magistrate's decision, and when Kahler moved to strike his objections, Eytcheson filed an apology to the court and a request for an extension to file appropriate objections to the magistrate's decision. The trial court granted Eytcheson an extension, and Eytcheson timely filed his second objections to the magistrate's decision. After the trial court overruled his objections and entered judgment for Kahler, Eytcheson filed a timely notice of appeal.

{¶ 41} Based on the record, Eytcheson has not established that he failed to receive notice of the filings in this case and that he was prejudiced thereby.

{¶ 42} Eytcheson's thirteenth assignment of error is overruled.

VII.

{¶ 43} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Thomas W. Kendo, Jr.
Kelly Wayne Eytcheson
Hon. Gregory F. Singer