[Cite as *In re A.C.-L.*, 2026-Ohio-1554.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.C.-L.

[Appeal by Mother, S.C.]

:      No. 115359
:
:
:
:
:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA24106913

---

### *Appearances:*

S.C., *pro se.*

LISA B. FORBES, P.J.:

{¶ 1} S.C. ("Mother") appeals the juvenile court's decision designating E.L. ("Father") as legal custodian and residential parent of A.C.-L. ("the Child"). After a thorough review of the facts and the law, we affirm.

## I. Procedural History

{¶ 2} On July 2, 2024, Father filed an application to determine custody of the Child (the "Application"). The service instructions attached to the Application provide a "Dove Ave." address in Cleveland, Ohio for Mother.

**{¶ 3}** The juvenile court docket underlying this appeal indicates that, on October 18, 2024, the court mailed a hearing notice addressed to Mother at the Dove Ave. location. The notice provides, "Trial — In-Person has been set" for "June 17, 2025 at 9:00 AM." Also on October 18, 2024, the court issued a journal entry appointing a guardian ad litem ("GAL") to represent the interests of the Child.

**{¶ 4}** The docket indicates that, on October 22, 2024, the court mailed a magistrate's pretrial order, addressed to Mother at that same Dove Ave. location. The order notes, in part, "This matter is continued to June 17, 2025, at 9:00 a.m. for Trial in-person, in Courtroom 8D."

**{¶ 5}** The juvenile court held a hearing on the Application on June 17, 2025. On June 24, 2025, the magistrate issued a decision recommending that Father be designated as the legal custodian and residential parent of the Child and that Mother have parenting time every other week. The court issued a judgment entry on July 11, 2025, adopting the magistrate's decision and ordering same.

**{¶ 6}** According to the juvenile court docket, the magistrate's decision and the juvenile court's judgment entry were sent to a "Deans Court" address. On July 20, 2025, Mother filed a "Change of Address" notice with the court, providing the "Dove Ave." address that had been listed for her in the service instructions attached to the Application.

**{¶ 7}** On July 20, 2025, Mother filed a notice of appeal.[1] Mother now raises

the following assignments of error:

> 1. The trial court erred by disregarding the children's established custodial history and Appellant's role as primary caregiver.
>
> 2. The trial court erred in finding that notice requirements were satisfied despite clear evidence Appellant did not receive proper notice, violating her right to due process.
>
> 3. The trial court erred by proceeding without an active Guardian ad Litem (GAL), depriving the children of an objective assessment of their best interests.
>
> 4. The trial court failed to consider court mandated OFW messages, emails, and other documentary evidence demonstrating Appellant's active caregiving and the children's welfare needs.
>
> 5. The trial court relied on clearly erroneous factual findings regarding Appellant's housing stability, despite no evidence of moves during the school year.
>
> 6. The trial court abused its discretion by changing the parenting exchange schedule to late evenings, which harms the children's stability and preparation for school.
>
> 7. The trial court erred by ordering child support without accounting for Appellant's actual caregiving and shared parenting contributions.

## II. Law and Analysis

### A. Juvenile Court Custody Determinations

**{¶ 8}** Father filed the Application under R.C. 2151.23(A)(2), which, along

with R.C. 2301.03, confers upon the juvenile court of Cuyahoga County the authority

"to determine the custody of any child not a ward of another court of this state." *See*

---

[1] While Mother's assignments of error discuss multiple children, her notice of appeal concerned only Cuyahoga C.P. No. FA 24106913, of which A.C.-L. is the subject.

*State ex rel. Jones v. Paschke*, 2024-Ohio-135, ¶ 13 (Juvenile courts in many counties "shall have exclusive, original jurisdiction" over custody determinations arising under R.C. 2151.23(A)(2).). R.C. 2151.23(A)(2) "does not articulate a standard for the juvenile court to apply when making such custody determinations." *In re C.R.*, 2006-Ohio-1191, ¶ 12, citing *Hockstock v. Hockstock*, 2002-Ohio-7208, ¶ 19. However, the juvenile court "shall exercise its jurisdiction in child custody matters in accordance with section[] 3109.04 . . . of the Revised Code." R.C. 2151.23(F)(1). "In accordance with R.C. 2151.23(F)(1), the best-interest standard set forth in R.C. 3109.04 applies in making custody determinations." *In re D.D.J.*, 2024-Ohio-2581, ¶ 17 (8th Dist.), citing *In re S.A.*, 2019-Ohio-4161, ¶ 24 (8th Dist.).

{¶ 9} When assessing best interest in a custody determination under R.C. 2151.23(A)(2), this court has found that "the court is to consider all relevant factors, including but not limited to those set forth under R.C. 3109.04(F)(1)." *In re S.A.* at ¶ 24, citing *Nicely v. Weaver*, 2013-Ohio-1621, ¶ 29 (5th Dist.). "[T]here is no requirement that a trial court separately address each factor enumerated in R.C. 3109.04(F)(1) and absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant 'best interest factors.'" *Id.*, citing *id. See In re Bonfield*, 2002-Ohio-6660, ¶ 45, 49-50 (Juvenile court may determine custody under R.C. 2151.23(A)(2) without reference to R.C. 3109.04 but must consider all known factors in determining what is in the best interest of the child.). Pertinent here, among the enumerated factors, a court shall consider: "[t]he

wishes of the child's parents regarding the child's care . . . [t]he child's interaction and interrelationship with the child's parents . . . and any other person who may significantly affect the child's best interest . . . the child's adjustment to the child's home, school, and community . . ." the "mental and physical health of all persons involved in the situation," and "the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." R.C. 3109.04(F)(1)(a), (c)-(f).

## B. Appellate Review

{¶ 10} A party may file written objections to a magistrate's decisions within 14 days of the filing of the decision. Juv.R. 40(D)(3)(b)(i). A party who objects to a magistrate's decisions must provide the court with a transcript of the evidence submitted to the magistrate. Juv.R. 40(D)(3)(b)(iii). "Where an objecting party fails to file a transcript, the juvenile court is required to 'adopt the factual findings of the magistrate' and . . . is limited to reviewing the magistrate's conclusions of law." *In re Ry.T.*, 2023-Ohio-12, ¶ 22 (8th Dist.), quoting *In re G.J.A.*, 2019-Ohio-1768, ¶ 20 (8th Dist.).

{¶ 11} We note that Mother did not file hearing transcripts with the trial court prior to filing her notice of appeal. Mother supplemented the appellate record with transcripts; however, this court cannot consider a transcript that the trial court had no opportunity to review. *In re R.O.*, 2025-Ohio-374, ¶ 23 (8th Dist.), citing Juv.R. 40(D)(3)(b)(iv); *In re A.L.*, 2013-Ohio-5120, ¶ 12 (8th Dist.), *citing State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995).

{¶ 12} Also, to the extent that Mother's assignments of error implicate events that occurred in the juvenile court after she filed her notice of appeal, we note that "'generally, the timely filing of a notice of appeal precludes a trial court from issuing further orders affecting matters at issue in the appeal.'" *State v. Clausing*, 2022-Ohio-1762, ¶ 10 (8th Dist.), quoting *State v. Aarons*, 2021-Ohio-3671, ¶ 20 (8th Dist.). "'Where a trial court enters an order without jurisdiction, its order is void and a nullity.'" *Id.*, quoting *id.* That is, "once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). *See Black v. Hicks*, 2018-Ohio-2289, ¶ 25 (8th Dist.).

{¶ 13} We generally review a trial court's adoption of a magistrate's decision under an abuse-of-discretion standard. *Fig v. Lynch*, 2024-Ohio-3196, ¶ 24 (8th Dist.), citing *Van Dress Law Offices Co., L.L.C. v. Dawson*, 2017-Ohio-8062, ¶ 15 (8th Dist.). Notably, an appellant's failure to object to the magistrate's decision and to file a transcript bars appellant from "'assign[ing] as error on appeal the court's adoption of any factual finding or legal conclusion'" of the magistrate and allows an appellate court to review only for plain error. *Seminole Indus. Inc. v. Walthaw*, 2026-Ohio-653, ¶ 12 (8th Dist.), quoting Civ.R. 53(D)(3)(b)(iv); *State ex rel. Neguse v. McIntosh*, 2020-Ohio-3533, ¶ 9. "In other words, 'the court of appeals cannot consider evidence that the trial court did not have when it made its decision.'" *Id.*, quoting *State ex rel. Pallone v. Ohio Court of Claims*, 2015-Ohio-2003, ¶ 11. In civil matters, the plain-error doctrine may be applied only to prevent a manifest

miscarriage of justice in exceptional circumstances. *Id.* at ¶ 13, 15, citing *Goldfuss v. Davidson*, 79 Ohio St. 3d 116, 121 (1997).

{¶ 14} Here, the magistrate issued its decisions on June 24, 2025, which the trial court adopted on July 11, 2025. Mother filed her notice of appeal on July 20, 2025, divesting the trial court of jurisdiction over this matter. Nonetheless, the juvenile court docket reveals that, while this appeal was pending, on July 21, 2025, Mother filed a document entitled "Objection to Magistrate's Decision and Request for Reconsider[ation]." On September 11, 2025, the juvenile court issued a journal entry that stated, "[T]he Motion for Objections to the Magistrate's Decision is Overruled." Mother also filed a request for transcripts on July 20, 2025, which the juvenile court granted on July 25, 2025, finding Mother to be indigent and waiving the cost of preparing the transcript. As noted, the juvenile court docket does not indicate that the hearing transcripts were filed with that court.

{¶ 15} In light of the foregoing, we will assess whether plain error occurred below, and our review will not consider the transcript that was never filed with the juvenile court. For ease of analysis, we address Mother's assignments of error out of order and, at times, together.

## C. Assignment of Error No. 3 — GAL

{¶ 16} Mother asserts in her third assignment of error that the juvenile court erred "by proceeding without an active GAL." Mother claims that the GAL appointed by the court in this case never contacted her and did not appear at the hearing.

{¶ 17} We acknowledge that, though the juvenile court appointed a GAL, the magistrate's decision and the juvenile court's judgment entry each provide, "Both Mother and Father have not spoken to the Guardian ad Litem." Further, the docket does not reflect that the GAL ever filed a report with the court.

{¶ 18} Nonetheless, we do not find that the court's decision to proceed without GAL participation constituted plain error. As an initial matter, we cannot say that this original custody determination under R.C. 2151.23(A)(2) required the court to appoint a GAL. "[T]he appointment of a GAL under R.C. 2151.281 and Juv.R. 4 are mandatory when required by statute." *In re D.R.B.*, 2015-Ohio-3346, ¶ 31 (8th Dist.). R.C. 2151.281 and Juv.R. 4(B), which overlap significantly, establish instances in which GAL appointment is mandatory, including in certain types of proceedings. *See* R.C. 2151.281 ("The court shall appoint a guardian ad litem" under certain circumstances in cases involving an "alleged or adjudicated . . . unruly child."). *See also* R.C. 2151.27(A)(1) (establishing adjudicatory procedure regarding an alleged unruly child). Under Juv.R. 4(B)(5), the court shall appoint a GAL in "[a]ny proceeding" that "involves allegations of abuse, neglect, or dependency, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding." Neither R.C. 2151.281 nor Juv.R. 4(B) provide that a GAL appointment is mandatory in an original custody determination under R.C. 2151.23(A)(2), the type of case at issue here.

{¶ 19} While R.C. 2151.281 and Juv.R. 4(B) list additional, fact-specific circumstances under which a court "shall" appoint a GAL — for example, when a

parent is mentally incompetent or under 18 years old — the court's October 18, 2024 journal entry appointing a GAL includes no findings to support that doing so was required here. Nor, absent review of the transcript, have we identified other information in the record indicating that a GAL appointment was mandatory under R.C. 2151.281 or Juv.R. 4(B).

{¶ 20} We note that R.C. 2151.281(D) establishes that, "upon the guardian ad litem's failure to faithfully discharge the guardian ad litem's duties," the court "shall discharge the guardian ad litem and appoint another guardian ad litem." However, because R.C. 2151.281 sets out circumstances in which GAL appointment is mandatory, unlike in the present case, we do not find that the court was obligated to discharge the GAL here. Further, "[o]ther courts have determined that when a parent cannot demonstrate prejudice arising from the action or nonaction of a GAL, then any potential error constitutes harmless error." *In re K.R.*, 2017-Ohio-7122, ¶ 22 (12th Dist.), citing *In re E.W.*, 2012-Ohio-208, ¶ 36 (3d Dist.), *In re Sanders Children*, 2004-Ohio-5878, ¶ 76 (5th Dist.), *In re Ridenour*, 2004-Ohio-1958, ¶ 24 (11th Dist.).

{¶ 21} Mother, who appears to have testified at the trial according to both the magistrate's decision and the juvenile court's judgment entry, provides no arguments to support a finding that the court was deprived of information for lack of GAL input. Mother has not demonstrated prejudice resulting from GAL inaction. Given the foregoing, we do not find that the court's resolution of this case without GAL participation amounts to error, much less plain error.

{¶ 22} Accordingly, assignment of error No. 3 is overruled.

**D. Assignments of Error Nos. 1, 4, and 5 — Factual Findings**

{¶ 23} Assignments of error Nos. 1, 4, and 5 concern the juvenile court's factual findings related to communication between the Child's parents, Mother's housing stability, and the Child's custodial history. Mother raises arguments implying that the court failed to consider the Child's best interest in assessing these factual issues. We find no reversible error.

{¶ 24} Mother has not demonstrated that the court failed to consider the best interest of the Child in making its custody determination. To the contrary, the magistrate's decision and the juvenile court's judgment entry state, "The Court considered the following factors," before listing each element of the best-interest standard defined in R.C. 3901.04(F)(1).

{¶ 25} The magistrate's decision and the juvenile court's judgment entry address communication between Mother and Father, each acknowledging Mother's "concerns" that such communication was "lacking." Because we cannot review the transcript, we are unable to evaluate Mother's claim that the juvenile court did not review texts and emails that purportedly demonstrate insufficient communication between her and Father. There is no information before us from which we can conclude that Father's communication with Mother was so inadequate that the juvenile court created a manifest miscarriage of justice by not granting Mother custody.

{¶ 26} Concerning Mother's housing stability, the magistrate's decision and juvenile court's judgment entry state as follows:

> Uncontested testimony from both parties is that Mother has moved a number of times in the past few years[, i]ncluding one period of time where she had access to subsidized housing but rather than use it, she continued to live with Father and simply pay the bills for her housing so that she could have it available when she wanted it.

{¶ 27} We can identify no information that would call into question the juvenile court's findings on these issues of fact. We see no reason why this information, if true, would weigh in favor of Mother having custody over Father and do not find that the juvenile court's ordering otherwise amounts to an abuse of discretion, let alone plain error. Again, we reiterate that we must accept as true the trial court's findings of fact.

{¶ 28} Mother argues that the trial court failed to consider the Child's custodial history. We again note that this appeal arose from an original application to determine custody under R.C. 2151.23(A)(2). Notably, in Ohio:

> "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation."

*In re B.A.L.*, 2016-Ohio-300, ¶ 10, fn. 2 (8th Dist.), quoting R.C. 3109.042(A).

{¶ 29} Mother does not identify any custodial history that would be pertinent here beyond that which R.C. 3109.042(A) confers on unmarried mothers

by default.  The statute bars courts from giving unmarried mothers an advantage on this basis in a custody proceeding.

{¶ 30} To the extent that Mother's assignment of error about custody contests the court's finding that "both mother and father have testified that the week on[,] week off schedule works for them," we find no error.  "Visitation and custody are distinct legal concepts." *Paschke*, 2024-Ohio-135, at ¶ 14, citing *In re Gibson*, 61 Ohio St.3d 168, 171 (1991).  Visitation "encompasses [a] party's right to visit [a] child," while custody "resides in the party or parties who have the right to ultimate legal and physical control of a child."  *Id.*, citing *id.* and R.C. 2151.011(B)(21) (defining "legal custody").  Further, because we cannot review the transcript, we are unable to assess the accuracy of the court's findings regarding whether Mother and Father employed and were both satisfied with a "week on, week off" visitation schedule.  We also do not find that the fact that Mother and Father alternated weeks with the Child, if true, would weigh in favor of Mother having custody over Father or that the court created a manifest injustice by ordering otherwise.

{¶ 31} We do not find that Mother, in raising these assignments of error pertaining to the court's findings of fact, has shown exceptional circumstances that make reversal necessary to prevent a manifest miscarriage of justice.

{¶ 32} Accordingly, assignments of error Nos. 1, 4, and 5 are overruled.

### E. Assignment of Error Nos. 6 and 7 — Parenting Schedule and Child Support

{¶ 33} Mother's sixth and seventh assignments of error address the court's orders making arrangements between Mother and Father going forward. Mother objects to the court's imposition of a parenting schedule that required exchange of the Child in "the late evenings" and asserts that the juvenile court erred by "ordering child support without accounting for Appellant's actual caregiving and shared parenting contributions." Based on the record before us, we find no reversible error.

{¶ 34} Concerning parenting time, we note again that R.C. 2151.23(F)(1) requires the juvenile court to exercise its jurisdiction in child-custody matters in accordance with R.C. 3109.04. R.C. 3109.04(A)(1) provides that, "in a manner consistent with the best interest of the children," the court shall divide between the parents rights and responsibilities for the care of the child, including the right of the nonresidential parent "to have continuing contact with the children." Mother does not object to the "week on, week off" schedule that the court ordered, arguing only that the court required her and Father to exchange the Child at a time that is disruptive to the Child's schedule. The court ordered that Mother "shall have visitation . . . every other week starting on Sunday evenings at 6 PM." Put simply, Mother has not demonstrated that requiring her and Father to exchange the Child at dinner time on a weekend constitutes an abuse of discretion, much less amounts to a miscarriage of justice.

{¶ 35} Further, we do not find that Mother's assignment of error regarding child support is within the scope of this appeal. "'[The court of appeals] need not address an assignment of error pertaining to issues outside the scope of an appeal.'" *State v. Green*, 2026-Ohio-738, ¶ 14 (8th Dist.), quoting *State v. Briscoe*, 2012-Ohio-4943, ¶ 9 (8th Dist.). "A notice of appeal shall 'designate the judgment, order, or part thereof appealed from.'" *Id.*, quoting App.R. 3(D). The magistrate's decision and the juvenile court's judgment entry address child support only to the extent that they state, "By operation of law, this matter shall be scheduled for child support." The docket underlying this appeal reveals that the juvenile court took no action related to child support between issuing its July 11, 2025 judgment entry and Mother's filing of her notice of appeal on July 20, 2025. At the time this opinion was written, a trial on the issue of child support was scheduled but has not yet occurred. Consequently, Mother's assignment of error regarding child support is outside the scope of this appeal, and we decline to address it.

{¶ 36} Accordingly, assignments of error Nos. 6 and 7 are overruled.

### F. Assignment of Error No. 2 — Notice

{¶ 37} With her second assignment of error, Mother asserts that she "did not receive proper notice." Mother claims that she did not receive, by mail, notice of hearings or copies of the court's decisions.

{¶ 38} Regarding whether Mother received notice of the hearing that was held on June 17, 2025, the magistrate's decision and the juvenile court's judgment entry both reference testimony from Mother, indicating that any notice issues that

occurred did not prevent Mother from participating in the hearing. We identify nothing in the juvenile court docket that suggests that the court sent information about the hearing schedule to the wrong address for Mother. The docket includes a hearing notice, which provides, "Trial — In-Person has been set" for "June 17, 2025 at 9:00 AM." The court appears to have mailed the notice on October 18, 2024, addressed to Mother's Dove Ave. location. The docket also indicates that, on October 22, 2024, the court mailed a magistrate's pretrial order, addressed to Mother at Dove Ave. The order notes, in part, "This matter is continued to June 17, 2025, at 9:00 a.m. for Trial in-person, in Courtroom 8D."

{¶ 39} We acknowledge that, according to the juvenile court docket, for reasons that are not apparent, the magistrate's decision and the juvenile court's judgment entry were sent to Mother at an address other than the Dove Ave. address. Mother appears to have attempted to make the court aware of this by filing a change of address notice after the magistrate's decision was sent out by the trial court.

{¶ 40} Given the irregularity Mother identified in the court's mailing of decisions and out of an abundance of caution, we considered above the issues raised in Mother's late-filed objections. Having done so and having found no merit in Mother's other assignments of error, we identify no manifest injustice arising from any miscommunication or confusion regarding Mother's address.

{¶ 41} Accordingly, assignment of error No. 2 is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

DEENA R. CALABRESE, J., and
EILEEN A. GALLAGHER, J., CONCUR