[Cite as *State v. Richardson*, 2016-Ohio-8081.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26649 |
| | : | |
| v. | : | T.C. NO. 14CRB4221 |
| | : | |
| DARRELL V. RICHARDSON | : | (Criminal appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____9th_____ day of _____December_____, 2016.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant City Prosecutor, 335 W. Third Street, Rm. 372, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

C. RALPH WILCOXSON, II, Atty. Reg. No. 0061974, 211 Kenbrook Drive, Suite #5, Vandalia, Ohio 45377
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Darrell V. Richardson appeals his conviction and sentence for one count of not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), a misdemeanor of the first degree, and two counts of acting as a commercial applicator without being licensed to do so, in violation

of R.C. 921.24(B), both misdemeanors of the first degree. Richardson filed a timely notice of appeal with this Court on November 24, 2014.

{¶ 2} In late 2012, the Pesticide and Fertilizer Regulation Section of the Ohio Department of Agriculture (DOA) received an anonymous tip that a company named Stop One Pest Control in Dayton, Ohio, was conducting a pest control business without the proper licensure. A business conducting the application of pesticides is required to have a special license granted by the DOA. Additionally, a pesticide business must employ at least one licensed commercial applicator. Any individual applying pesticides for hire must possess an applicator's license *or* be working for a properly licensed business.

{¶ 3} After an initial investigation, Agricultural Inspection Manager James Belt became aware that the appellant, Richardson, was working as a pesticide applicator for Stop One in 2012. Stop One was managed by an individual named Homer Fields, who created the business in early 2012 after filling out an application to work for a pesticide business owned by Richardson called Ohio State Pest Control. Fields, however, was unable to perform manual labor because of a pre-existing elbow injury for which he received worker's compensation. Therefore, Fields testified that he managed the business and scheduled appointments while Richardson agreed to do the actual spraying of pesticides at their clients' residences.

{¶ 4} At the time Stop One was incorporated, Fields possessed a valid commercial applicator's license. Fields also applied for and was granted a pesticide business license by the DOA. Fields was listed as the owner of Stop One with the Secretary of State of Ohio. Fields testified that, although he did not ask, he assumed that Richardson had a valid commercial applicator's license at the time that the two men began working together.

Fields further testified that at all times, Richardson held himself out as a licensed pesticide applicator with approximately twenty-six years of experience in the field. Furthermore, the evidence adduced at trial established that Richardson funded the incorporation of the business and paid for all of the supplies and pesticides. Additionally, while both Richardson's and Fields' names were on the corporate account opened at Chase Bank, both Fields and his wife, Martha, testified that Richardson handled all the business finances and bank correspondence.

{¶ 5} Richardson did not have an applicator's license when he worked for Stop One and had twice been convicted of acting as a commercial applicator without being licensed in 2008 and 2009. The State argued that Richardson essentially hired Fields because he was a licensed commercial applicator. Because of Richardson's past convictions for acting as a commercial applicator without being licensed, he was unable to acquire his own license. Once Fields was "hired," the State asserted that Richardson directed him to register the name of the new business as Stop One Pest Control. The State argued that Richardson was using Fields as a straw man to manage the business because he had the proper licensure. Using Fields' applicator and pesticide business licenses, Richardson was able to run Stop One himself while not being properly licensed to do so. Simply put, the State alleged that Richardson was performing pesticide application without a license on his own behalf and at his own direction without any supervision from Fields who was properly licensed by the DOA.

{¶ 6} In the latter part of 2012, Fields began receiving numerous complaints regarding Richardson's work performance, i.e. arriving late to jobs and failing to apply the pesticides correctly. Fields testified that several times, he, accompanied by his wife or

another individual, had to return to the dissatisfied clients' residences to "retreat" the bedbug infestations with pesticide. Because of Fields' prior injury, he was unable to perform the pesticide application himself. Fields therefore brought someone else to apply the pesticides at his direction. Because of Richardson's continued poor job performance, Fields terminated his employment on December 12, 2012.

{¶ 7} Pertinent to the instant case, the parties stipulated that between September 30, 2012, and December 18, 2012, Fields allowed his business license and his personal commercial applicator's license to lapse because he failed to pay late fees associated with said licensure. The parties also stipulated that Richardson did not possess an applicator's license or a pesticide business license at any point during the time he worked at Stop One.

{¶ 8} Shortly thereafter, the DOA received the anonymous complaint regarding Stop One's alleged failure to possess a valid pesticide applicator's license. The DOA performed its investigation into the complaint and submitted its findings to the State. Thereafter, on June 10, 2014, the State filed a complaint in the instant case in Dayton Municipal Court charging Richardson with five counts of not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), and five counts of acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B).[1] At his arraignment on June 12, 2014, Richardson pled not guilty to

---

[1] Two additional charges for not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), and acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B) were brought by the State against Richardson in separate Case No. 2013-CRB-4239. This case was consolidated with the instant case for trial purposes, but both counts in Case No. 2013-CRB-4239 were dismissed by the State at the close of its case in chief.

the charged offenses.

{¶ 9} A jury trial was held in Dayton Municipal Court on September 30, October 1, and October 2, 2014. At the close of the State's case in chief, it dismissed six counts in its complaint, leaving the following four counts to be submitted to the jury: Count I - not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), regarding an offense committed on September 3, 2012; Count II - acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B), also regarding September 3, 2012; Count III - not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), regarding an offense committed on December 3, 2012; and Count IV - acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B), also regarding December 3, 2012.

{¶ 10} The jury found Richardson not guilty of Count I. The jury found Richardson guilty of Counts II, III, and IV. At disposition on November 20, 2014, the trial court merged Counts III and IV, and the State elected to proceed with Count IV for sentencing purposes. On Count IV, the trial court sentenced Richardson to 180 days in jail. On Count II, the trial court sentenced Richardson to a consecutive sentence of 180 days in jail, but suspended 180 days of the aggregate one-year sentence. The trial court ordered Richardson to pay a fine of $1,000.00 and court costs, but suspended the fine. Lastly, the trial court placed Richardson on three years of supervised probation and ordered him not to engage in the application of pesticides without a license.

{¶ 11} It is from this judgment that Richardson now appeals.

{¶ 12} Because they are interrelated, we will address Richardson's first and fourth

assignments of error together as follows:

{¶ 13} "THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL."

{¶ 14} "THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 15} In his first assignment, Richardson contends that the trial court erred when it overruled his Crim.R. 29 motion for acquittal with respect to Count II - acting as a commercial applicator without being licensed, in violation of R.C. 921.24(B), regarding the offense which occurred on September 3, 2012. Specifically, Richardson argues that the State failed to adduce any evidence that the offense for which he was charged in Count II actually occurred on September 3, 2012. Richardson also asserts his motion for acquittal should have been granted because the State failed to establish that Counts III and IV occurred within Dayton, Ohio, the extent of the trial court's jurisdiction. Richardson further argues that the State failed to adduce any evidence that the substance he used to treat his clients' bedbug infestations was actually a pesticide as defined by R.C. 921.01. In his fourth assignment of error, Richardson argues that the jury's guilty verdicts were against the manifest weight of the evidence.

{¶ 16} Although the State does not raise the issue, we note that the record fails to establish that Richardson renewed his Crim. R. 29 motion for acquittal at the close of all the evidence in his jury trial. Here, Richardson moved for acquittal at the close of the State's case-in-chief, the trial court denied the motion, and Richardson then presented the testimony of two witnesses for the defense. After resting, the printed record provided to this Court does not indicate that Richardson renewed his Crim. R. 29 motion for

acquittal. Richardson has therefore failed to preserve his insufficiency argument by not renewing it at the close of evidence. *See State v. Zimpfer,* 2d Dist. Montgomery No. 26062, 2014–Ohio–4401, ¶ 42 (appellant preserved his insufficiency argument by making an unsuccessful Crim. R. 29 motion for acquittal at the close of evidence at trial). It is generally accepted in Ohio that if counsel fails to make *and* renew a Crim. R. 29 motion during a jury trial, the issue of sufficiency is waived on appeal. *State v. Beesler,* 11th Dist. Ashtabula No. 2002–A–0001, 2003–Ohio–2815, ¶ 23. However, even if Richardson had renewed his Crim. R. 29 motion, we conclude that his argument that his convictions for violations of R.C. 921.24(B) and R.C. 921.06(A)(1) were based upon insufficient evidence lacks merit.

{¶ 17} Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher,* 6th Dist. Lucas No. L–06–1039, 2007–Ohio–3960. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley,* 2d Dist. Clark No. 2007 CA 99, 2008–Ohio–4636, ¶ 12.

{¶ 18} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of

the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 19} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 20} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 21} With respect to Count II, Richardson was found guilty of acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B), which provides:

No person shall do any of the following:

\*\*\*

(B) Act as a commercial applicator without being licensed to do so;

\*\*\*.

{¶ 22} " 'In a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged.' " *State v. S.S.,* 10th Dist. Franklin No. 13AP–1060, 2014-Ohio-5352, 2014 WL 6851969, ¶ 39 (Dec. 4, 2014), quoting *Tesca v. State,* 108 Ohio St. 287, 140 N.E. 629 (1923), paragraph one of the syllabus. "Where the precise date and time of a violation of the statute are not essential elements of the crime, an indictment need not allege a specific date of the offense." *Id.,* citing *State v. Sellards,* 17 Ohio St.3d 169, 171–72, 478 N.E.2d 781 (1985). " 'The General Assembly, in declaring what shall be sufficient in an indictment, provided, among other things, that it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment.' " *Id.,* quoting *Sellards* at 171, 478 N.E.2d 781, citing R.C. 2941.03(E). "Proof of the offense on or about the alleged date is sufficient to support a conviction even where evidence as to the exact date of the offense is in conflict." *Id.,* citing *State v. Cochran,* 2012-Ohio-5899, 983 N.E.2d 903, ¶ 82 (10th Dist.), citing *State v. Dingus,* 26 Ohio App.2d 131, 137, 269 N.E.2d 923 (4th Dist.1970). "The exact date is not essential to the validity of the conviction and the failure to prove that is of no consequence." *Id.,* citing *Cochran* at ¶ 82. "The state's only responsibility is to present proof that the offenses alleged in the indictment occurred reasonably within the time frame alleged." *Id.,* citing *Sellards* at 171, 478 N.E.2d 781; *Cochran* at ¶ 82; *State v.*

*Barnhart,* 7th Dist. Jefferson No. 09JE15, 2010-Ohio-3282, ¶ 50.

{¶ 23} As previously noted, the parties stipulated at trial that Richardson did not have a commercial applicator's license during the relevant time period in this case from September 3, 2012, and lasting until the termination of Richardson's employment on December 12, 2012. Here, the criminal complaint charging Richardson in Count II stated that the violation of R.C. 921.24(B) occurred "on or about September 3, 2012." At trial, Tina Pritchett, a former client of Stop One Pest Control, testified to the events underlying Count II. While Pritchett did not testify to the exact date of the offense, she did testify that she contacted Stop One in September of 2012 in order to address a bedbug problem in her residence. Pritchett testified that shortly after she contacted Stop One, Richardson came to her home on 2112 East Fourth Street in Dayton, Ohio, and made one application of pesticide. Significantly, Richardson admitted during cross-examination that he arrived at Pritchett's house on September 3, 2012, and applied a pesticide treatment for bedbugs on that date. Given these facts, the jury could readily find that the offense occurred reasonably within the time frame alleged in the complaint, and Richardson's argument is, therefore, without merit.

{¶ 24} Richardson further asserts his motion for acquittal should have been granted because the State failed to establish venue in the City of Dayton for Counts III and IV which occurred on December 3, 2012, at the residence of Darrell Byrd located at 5294 Torch Lane in Dayton, Ohio.

{¶ 25} Although venue is not a material element of a charged offense, the prosecution must nevertheless prove it. *State v. Draggo,* 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). However, venue need not be proved in express terms, so long as

it is established by all the facts and circumstances in the case. *State v. Gribble,* 24 Ohio St.2d 85, 263 N.E.2d 904 (1970), paragraph two of the syllabus. Venue is proper in the county where the offense or any element of the offense was committed. R.C. 2901.12(A). Trial courts have broad discretion to determine the facts that would establish venue. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

**{¶ 26}** In the instant case, Byrd testified that his house and the property on which it sits was located inside the City of Dayton. Byrd testified that he had lived at 5294 Torch Lane for approximately eighteen years. Byrd further testified that his property had been annexed by the City of Dayton before he moved to that address. Byrd's testimony regarding the location of his house was uncontroverted. Richardson fails to cite any support for his argument that the State was required to produce materials documenting the annexation in order to establish that venue was proper regarding Counts III and IV in the instant case. Based on the foregoing, sufficient direct and circumstantial existed to support the element of venue beyond a reasonable doubt.

**{¶ 27}** Lastly, Richardson argues that the evidence was insufficient to prove that he applied pesticides as defined by R.C. 921.01, which states in pertinent part:

(JJ) "Pesticide" means any substance or mixture of substances intended for

either of the following:

(1) Preventing, destroying, repelling, or mitigating any pest;

(2) Use as a plant regulator, defoliant, or desiccant.

"Pesticide" includes a pest monitoring system designated by rule.

**{¶ 28}** Specifically, Richardson asserts that the State "failed to present any evidence to show that substances or chemicals used by Defendant were prohibited or

contained any active ingredient as defined in O.R.C. 921.01 Pesticide definitions."

{¶ 29} Richardson's argument is undermined by his own testimony at trial. During cross-examination, the following exchange occurred between Richardson and the State regarding the pesticides he applied at Byrd's residence:

The State: Pesticides? Do you remember exactly what pesticides you applied [at Byrd's residence]?

Richardson: Sure, I remember.

Q: Which ones?

A: The chemicals that [Fields] had given me to use.

Q: Okay, and what were they?

A: Do you want the names?

Q: Yes.

A: One, one chemical is called suspend.

Q: And what's that used for?

A: It's a knockdown chemical that you use that would kill on contact.

Q: Okay.

A: And the other I mentioned to [defense counsel] was gentrol, which is a growth regulator –

Q: Okay, and you started applying –

A: Which controls the growth.

Q: Okay and you started applying those pesticides at, on the same visit once you realized what the job needed, is that correct?

A: On the same visit?

\*\*\*

Q: Yes.

**{¶ 30}** The following exchange occurred between Richardson and the State regarding the pesticides he applied at Pritchett's residence:

The State: Do you remember going out to Tina Pritchett's house on September third?

Richardson: Yes, she's a very nice lady.

Q: All right and when you were out at that house you did, was it a bedbug treatment?

A: Yes.

Q: How many times did you go out to Miss Pritchett's house?

A: I think it was twice.

Q: *And do you remember what the treatment was that you did?*

A: *It was a bedbug treatment, I mean as far as the application –*

Q: Yes.

A: *To administer the chemical in what areas, is this what you asking me*?

Q: *Well, my question is what did you do at Miss Pritchett's house? What pesticides did you apply?*

A: *Okay, the same pesticide, suspend, okay. That's a knockdown. Gentrol is a growth regulator. You mix those two together in measurements and the measurements that you would see if you looked at the actual receipt is the same thing that was written up by* [Fields] *who showed me exactly how it's done so we can make sure that our records are*

in proper order so when the inspectors come -- ***.

{¶ 31} We also note that Fields testified that when he was called out to "retreat" Pritchett's house, he observed residue from where Richardson had previously applied "dry dust" or "delta dust" which is a pesticide commonly used to treat bedbug infestations. Therefore, viewed in a light most favorable to the State, sufficient evidence was presented that Richardson applied "pesticides" to exterminate bedbugs as the term is defined pursuant to R.C. 921.01(JJ).

{¶ 32} Thus, having reviewed the record, we find no merit in Richardson's manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton,* 2d Dist. Miami No. 2010–CA–27, 2012–Ohio–4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the jury quite reasonably could have credited the State's evidence which established that Richardson was guilty of the offenses for which he was convicted. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching guilty verdicts for one count of not having a commercial applicator's license (with a prior conviction), in violation of R.C. 921.06(A)(1), and two counts of acting as a commercial applicator without being licensed to do so, in violation of R.C. 921.24(B).

{¶ 33} Richardson's first and fourth assignments of error are overruled.

{¶ 34} Richardson's second assignment of error is as follows:

{¶ 35} "THE TRIAL COURT ERRED BY OVERRULING OBJECTIONS AND ALLOWING TESTIMONY REGARDING BANK DOCUMENTS."

{¶ 36} In his second assignment, Richardson argues that the trial court erred when

it allowed the State, over objection, to introduce bank statements for Stop One Pest Control because they constitute impermissible hearsay. Specifically, Richardson asserts that the State failed to properly authenticate the bank documents pursuant to Evid.R. 803(6) before the trial court received them into evidence.

{¶ 37} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). An abuse of discretion implies that the judge's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 38} Evid.R. 803(6) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
* * *

{¶ 39} In order to lay a proper foundation for the admission of a business record, the proponent of the document must demonstrate that: (1) the record was prepared by an employee of the business who had a duty to report the information; (2) the person

providing the information contained in the record had personal knowledge of the event or transaction reported; (3) the record was prepared at or near the time of the event or transaction; and (4) it was a regular practice or custom of the business in question to prepare and retain the type of record. *State v. Hall*, 2d Dist. Montgomery No. 19074, 2003-Ohio-2824, ¶ 34. "Generally, the business record exception requires that some person testify as to the regularity and reliability of the business activity involved in the creation of the record." *Ohio Receivables, L.L.C. v. Williams,* 2d Dist. Montgomery No. 25427, 2013-Ohio-960, ¶ 14. The phrase "qualified witness" should be broadly interpreted. *Hall,* 2d Dist. Montgomery No. 19074, 2003-Ohio-2824, ¶ 35.

{¶ 40} The State offered copies of bank records for Stop One Pest Control marked as "State's Exhibit 6." Attached to the bank records was a letter typed on J.P. Morgan/Chase Bank letterhead which stated as follows:

> I hereby certify based on my knowledge that these enclosed records are a true and correct copy of the original documents maintained by JP Morgan Chase Bank, N.A. in the ordinary course of business, and the original records were created at or around the time of the actual transactions.

{¶ 41} The certification letter was addressed to Agent John Eagon from the Ohio Department of Agriculture and signed by Jeanette Chiles, a Document Review Specialist employed by JP Morgan/Chase Bank. At trial, Eagon testified that he requested the bank records of Stop One pursuant to a subpoena duces tecum. The subpoena drafted by Eagon and addressed to Chase Bank was also introduced into evidence. Eagon testified that he did not personally observe Chiles sign the records, and he admitted that

he would not know if the certification letter was actually from Chase Bank. Based on the information in the certification signed by Chiles, Eagon testified that the bank records were true and correct copies and the documents were maintained by the bank in the ordinary course of business. Based on Eagon's testimony and the certified letter from Chase Bank, the trial court held that proper foundation had been laid and therefore found that the bank documents had been properly authenticated.

**{¶ 42}** "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons,* 2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12. The threshold standard for authenticating evidence is low, *State v. Wiley,* 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512, ¶ 11, and Evid.R. 901(B) provides examples of numerous ways that the authentication requirement may be satisfied. The most commonly used method is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *State v. Renner,* 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 30.

**{¶ 43}** In *State v. Hood,* 135 Ohio St.3d 137, 2012–Ohio–6208, 984 N.E.2d 1057, the cellular telephone records from the defendant and his co-conspirators were admitted into evidence to place the defendant in the vicinity of the crime and to show contact with his co-conspirators. Although detectives testified they subpoenaed the cellular telephone records from the cellular-phone companies, the subpoenas were not in the record. Defense counsel objected to the use of these records "claiming that the records lacked verification or certification of their authenticity." *Hood* at ¶ 20. At trial, a detective was called by the State to verify the records were obtained through subpoena and to testify regarding his experience interpreting cell-phone records.

**{¶ 44}** In finding the admission of the cell-phone records a constitutional error, the *Hood* court reasoned:

Here, there was simply no foundation laid by a custodian of the record or by any other qualified witness. Detective Veverka was not a custodian of the records. He did not prepare or keep the phone records as part of a regularly conducted business activity. Nor was he an "other qualified witness" under the rule. A "qualified witness" for this purpose would be someone with "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business." 5 McLaughlin, Weinstein's Federal Evidence Section 803.08[8][a] (2d Ed.2009); *United States v. Lauersen,* 348 F.3d 329, 342 (2d Cir.2003). Tellingly, in the midst of discussions regarding the lack of authentication of the records, the trial judge remarked, "My gut reaction is to subpoena Verizon." That did not happen. ***

Thus, the cell-phone records in this case were not authenticated as business records, and that fact affects their status in regard to the Confrontation Clause. If the records had been authenticated, we could be sure that they were not testimonial, that is, that they were not prepared for use at trial. Without knowing that they were prepared in the ordinary course of a business, among the other requirements of Evid.R. 803(6), we cannot determine that they are nontestimonial. We thus find that the admission of the records in this case was constitutional error.

*Id.* at ¶ 40-42.

**{¶ 45}** In the instant case, Stop One's bank records from Chase Bank were delivered to Eagon pursuant to a subpoena sent from the Ohio Department of Agriculture, and the subpoena is part of the record. Attached to the bank records is a certified letter from Chiles who identified herself as a document review specialist employed by Chase Bank. Such a certification from the custodian was lacking in *Hood.* Using *Hood* as a guide, we conclude that the subpoena issued by Eagon in his official capacity as an agent of the DOA and the certified letter from Chiles provide the bank records with sufficient indicia of reliability that the documents are in fact what they purport to be. We also note that similar to cellular telephone records, bank records are business records that are *not* prepared for litigation and are nontestimonial in nature. Based upon the evidence adduced at trial, we find that the State presented sufficient evidence to authenticate Stop One's bank records from Chase Bank. Accordingly, the trial court did not err when it admitted the properly authenticated bank documents into evidence under the business records exception to the hearsay rule.

**{¶ 46}** Richardson's second assignment of error is overruled.

**{¶ 47}** Richardson's third assignment of error is as follows:

**{¶ 48}** "THE TRIAL COURT ERRED BY NOT ALLOWING THE DEFENSE TO IMPEACH A WITNESS USING PRIOR INCONSISTENT STATEMENTS."

**{¶ 49}** In his third assignment, Richardson contends that the trial court erred when it sustained an objection from the State when defense counsel attempted to impeach Fields' testimony with "Defense Exhibit H." Richardson argues that he should have been permitted to cross-examine Fields with Def. Ex. H, which was purported to be "evidence

of an agreement with the State [that Fields] would not be charged in exchange for his testimony against the Defendant."

{¶ 50} Introduction of prior inconsistent statements is governed by Evid.R. 613(B)(1), which provides as follows:

**(B) Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶ 51} " 'When extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given

an opportunity to interrogate the witness on the inconsistent statement.' " *State v. Robinson,* 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 27, citing *State v. Mack,* 73 Ohio St.3d 502, 514–515, 653 N.E.2d 329 (1995). If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the "evidence does not relate to a collateral matter[.]" *Id.* at ¶ 28, citing *State v. Pierce,* 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 82 (2d Dist.).

{¶ 52} During Richardson's cross-examination of Fields, the following exchange occurred regarding the attempted introduction of the alleged prior inconsistent statement:

Richardson: I'm going to hand you what's been marked as Defendant's Exhibit "H."

Tell me if you recognize this document.   Do you recognize this document?

Fields: No.

Q: Is there a signatue [sic] on that document?

A: Yeah.

Q: Whose is it?

A: Looks like mine but I don't remember this document.

Q: Can you read that document to us?

The State: I'm going to object, Your Honor, I don't –

The Court: Yeah –

The State: There's no foundation at this point.

The Court: Until it's received into evidence, sustained.

Richardson: Doesn't that document indicate that Mister Richardson is working for you?

The State: Objection, same question.

The Court: Sustained.

Richardson: Wasn't Mister Richardson working for you from '12, 2012 until April 20, 2013?

Fields: No, I don't know, no, no.

Q: So you're telling us that that document is forged?

The State: Objection, Your Honor.

The Court: Overruled.

Fields: I remember closing the business down at [12/12/12] and it says [4/20/13] here.  That's not correct.  It can't be.

Richardson: So you don't recall –

A: No.

Q: Signing that document at all?

A: *No, sorry sir.*[2]

{¶ 53} Under the circumstances presented, Richardson was permitted to impeach Fields with any prior inconsistent statements contained in Def. Ex. "H."  Richardson was also permitted a reasonable opportunity to refresh Fields' recollection of the document.  However, once Fields unequivocally testified that he did not recognize Def. Ex. "H,"

---

[2] Def. Ex. "H," which was not dated, states as follows, "Step 1 Pest Control – Darrell Richardson has worked for us since September 1 of this year 2012 – 4-20-13 – Thank You[.]"  [Signed] Homer Fields.

Richardson was not permitted under Evid.R. 613(B) to ask him to read it out loud in front of the jury. Simply put, defense counsel failed to lay the proper foundation for introduction of Def. Ex. "H." Where impeachment is used as a "subterfuge" to get evidence before the jury which is not otherwise admissible, it is improper. *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648 (2d Dist.).

{¶ 54} Richardson did not present any other evidence in order to establish that Fields authored and signed the statement contained in Def. Ex. "H." Because the proper foundation was not laid for introduction of the document into evidence, the trial court correctly sustained the State's objection to Def. Ex. "H" being used to impeach Fields' testimony.

{¶ 55} Richardson's third assignment of error is overruled.

{¶ 56} Richardson's fifth and final assignment of error is as follows:

{¶ 57} "[THE] TRIAL COURT ERRED IN IDENTIFYING THE DEFENDANT AFTER JURY WAS UNABLE TO DO SO DURING DELIBERATION IN LIEU OF GIVING AN ALLEN CHARGE."

{¶ 58} In his final assignment, Richardson contends that the trial court erred when it answered a question from the jury during deliberations regarding Counts II and IV. Specifically, the jury made the following inquiry of the trial court:

On Count II and IV was the charge against Darrell [Richardson] or Stop One

Pest Control having a commercial applicator license?

Tr. at 683. Over an objection from defense counsel, the trial court sent a message to the jury, wherein it responded simply that "Darrell Richardson is the only defendant in this case."

{¶ 59} " 'Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request.' " *State v. Tobin,* 2d Dist. Greene No. 2005 CA 150, 2007–Ohio–1345, ¶ 87, quoting *State v. Carter,* 72 Ohio St.3d 545, 651 N.E.2d 965 (1995), paragraph one of the syllabus. " 'A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion.' " *Id.,* quoting *Carter* at 553.

{¶ 60} An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[A]n abuse of discretion most commonly arises from a decision that was unreasonable." *Wilson v. Lee,* 172 Ohio App.3d 791, 2007–Ohio–4542, 876 N.E.2d 1312, ¶ 11 (2d Dist.), citing *Schafer v. RMS Realty,* 138 Ohio App.3d 244, 300, 741 N.E.2d 155 (2d Dist.2000). (Other citation omitted.) "Decisions are unreasonable if they lack a sound reasoning process." *Id.*

{¶ 61} Upon review, we conclude that the trial court did not abuse its discretion when it answered the jury's question in the instant case. The trial court did not mislead the jury by reminding them that Richardson was the only defendant in the case. In its instructions, the trial court informed the jury that "the defendant is charged with four counts." It is apparent that the question asked by the jury established that they were merely confused regarding who the defendant was with respect to Counts II and IV. In its brief response, the trial court simply clarified its earlier jury instructions regarding the identity of the defendant. In doing so, the trial court cleared up any confusion which might have existed by correctly identifying the defendant in Counts II and IV as

Richardson. In our view, the trial court response to the jury question was for clarification and did not prejudice Richardson in any way.

**{¶ 62}** Richardson's fifth and final assignment of error is overruled.

**{¶ 63}** All of Richardson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Matthew Kortjohn
C. Ralph Wilcoxson, II
Hon. Deirdre E. Logan