[Cite as *State v. Shutway*, 2020-Ohio-5035.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-39 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-77 |
| | : | |
| JOHN ANTHONY SHUTWAY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 23rd day of October, 2020.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

JOHN ANTHONY SHUTWAY, 3832 Township Road 165, West Liberty, Ohio 43357
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, John Anthony Shutway, appeals pro se from his conviction in the Champaign County Court of Common Pleas after a jury found him guilty of one count of failure to comply with an order or signal of a police officer and one count of obstructing official business. For the reasons outlined below, Shutway's conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On March 20, 2018, Officer Chad Duncan of the Tremont City Police Department was on duty monitoring traffic with his radar gun on Valley Pike in Clark County, Ohio, when he observed a minivan traveling 36 miles per hour in a 25 miles per hour zone. Upon observing this speeding violation, Officer Duncan activated the siren and overhead lights on his marked patrol cruiser and pulled behind the minivan to initiate a traffic stop. The driver of the minivan, Shutway, refused to pull his vehicle over and continued to drive northbound on Valley Pike toward Champaign County. As a result, Officer Duncan radioed dispatch and advised that he was pursuing a vehicle that would not pull over and that the vehicle was headed toward Champaign County.

{¶ 3} The Champaign County Dispatch Center was notified of the pursuit and called out the pursuit over the radio. In response, Champaign County Sheriff's Deputies Zac Prickett and Brandon Fenwick joined Officer Duncan in pursuit of Shutway near the intersection of State Route 560 and U.S. Route 36 in Champaign County. Deputies Prickett and Fenwick eventually took the lead in the pursuit, which went on for 12 to 13 miles at speeds of 55 to 60 miles per hour. During the pursuit, Shutway drove in a dangerous and reckless manner, as he nearly collided with Deputy Prickett's vehicle and

caused Prickett to swerve off the road.

{¶ 4} The pursuit ended in a rural area on Church Road in Champaign County. The officers managed to block the roadway and force Shutway to stop his vehicle. Despite being stopped, Shutway would not comply with the verbal orders and commands of the officers. The officers ordered Shutway multiple times to exit his vehicle and he refused. Shutway also refused to roll down his window and unlock his door. In light of Shutway's resistance and failure to comply with the officers' commands, Deputy Fenwick broke the window out of the driver-side door of Shutway's vehicle.

{¶ 5} After Deputy Fenwick broke the window, Deputy Prickett reached inside Shutway's vehicle in an attempt to unlock the door and unbuckle Shutway's seatbelt. Shutway, however, still refused to comply and began to struggle with Deputy Prickett. Upon observing Deputy Prickett struggling with Shutway, Deputy Fenwick pulled out his taser and tased Shutway. Only then was Deputy Prickett able to unbuckle Shutway's seatbelt and remove him from the vehicle. Once removed from the vehicle, the officers placed Shutway into custody.

{¶ 6} Shutway was subsequently charged in the Champaign County Municipal Court for two counts of felonious assault, one count of failure to comply with an order or signal of a police officer, and one count of obstructing official business. Approximately two weeks later, a Champaign County grand jury returned an indictment charging Shutway with one count of failure to comply with an order or signal of a police officer and one count of obstructing official business. Both of these counts included a specification for the forfeiture of Shutway's minivan. The indicted charges and specifications pertained to the same conduct that Shutway was charged for in the Champaign Municipal

Court.

{¶ 7} Shortly after Shutway's indictment, the State moved to dismiss the charges in municipal court. The municipal court granted the State's motion and dismissed the case against Shutway subject to the jurisdiction of the Champaign County Court of Common Pleas. With regard to the indicted charges, Shutway pled not guilty and the matter proceeded to a jury trial. Before Shutway's case was submitted to the jury, the State dismissed the two forfeiture specifications. After hearing the testimony and evidence presented by the parties, the jury found Shutway guilty of failure to comply with an order or signal of a police officer and obstructing official business. At sentencing, the trial court ordered Shutway to complete five years of community control sanctions. The trial court also suspended Shutway's driver's license for 13 years and ordered Shutway to pay a fine of $2,750 and court costs.

{¶ 8} Shutway now appeals from his conviction, raising four assignments of error for review. Before we address Shutway's assigned errors, we note that in proceeding with his appeal, Shutway filed a reply brief with three exhibits attached thereto. The exhibits include a traffic ticket issued to Shutway on March 20, 2018; an audio recording containing various radio communications between an unidentified police officer and a dispatcher; and a copy of an e-mail correspondence between the Tremont City police chief and the 9-1-1 coordinator of the Clark County Sheriff's Office. The State filed a motion to strike these exhibits because they were not part of the record on appeal.

{¶ 9} Upon review, the State's motion to strike is granted. "[I]n reviewing the trial court's judgment, we are limited to the record before the trial court." *Williams v. Pioneer Credit Recovery, Inc.*, 2d Dist. Montgomery No. 28524, 2020-Ohio-397, ¶ 16, citing *Kahler*

*v. Eytcheson*, 2d Dist. Montgomery No. 23523, 2012-Ohio-208, ¶ 23. " 'An exhibit merely appended to an appellate brief is not part of the record, and we may not consider it in determining the appeal.' " *Id.*, quoting *State v. Grant*, 10th Dist. Franklin Nos. 12AP-650 and 12AP-651, 2013-Ohio-2981, ¶ 12. *Accord State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 29. Therefore, for purposes of determining the merits of this appeal, we will not consider the new documents that Shutway attached to his reply brief.

### First Assignment of Error

{¶ 10} Under his first assignment of error, Shutway contends that the jury's verdict finding him guilty of failure to comply with an order or signal of a police officer and obstructing official business was invalid because the verdict form signed by the jurors did not include a finding that Champaign County was the correct venue. We disagree.

{¶ 11} As a preliminary matter, we note that during his trial, Shutway did not object to the verdict forms on the basis that they failed to include a finding as to venue. As a result, Shutway has waived all but plain error with regard to that issue. *See State v. Ropp*, 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, ¶ 47; *State v. Shedwick*, 10th Dist. Franklin No. 11AP-709, 2012-Ohio-2270, ¶ 43. To prevail under the plain error standard, Shutway "must demonstrate both that there was an obvious error in the proceedings and that but for the error, the outcome of [his] trial clearly would have been otherwise." *State v. Satterfield*, 2017-Ohio-5616, 94 N.E.3d 171, ¶ 31 (2d Dist.), citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 61-62.

{¶ 12} We find no obvious error with regard to the jury verdict forms at issue.

" '[W]hen a court submits a verdict form containing a statutory description of the offense, it commits reversible error if the description omits *essential elements of that offense.*' " (Emphasis added.) *State v. Harwell*, 2d Dist. Montgomery No. 25852, 2015-Ohio-2966, ¶ 59, quoting *State v. Lampkin*, 116 Ohio App.3d 771, 774, 689 N.E.2d 106 (6th Dist.1996). While venue is a fact that must be proven at trial, it "is not a material element of any offense charged." (Citation omitted.) *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). *Accord State v. Richardson*, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 25 (2d Dist.); *State v. Weber*, 2d Dist. Montgomery No. 25508, 2013-Ohio-3172, ¶ 32 (venue is not a material element of a charged offense). Rather, "[t]he elements of the offense charged and the venue of the matter are separate and distinct." (Citations omitted.) *Draggo* at 90.

{¶ 13} Even if jury verdict forms were required to mention the jury's finding as to venue, we would still not find an obvious error in the verdict forms at issue. The language used in the verdict forms sufficiently established that the jury found Shutway's offenses were committed in Champaign County, Ohio. Specifically, the first verdict form contains the heading "Count One" followed by the proper statutory definition for the offense of failure to comply with an order or signal of a police officer. The second verdict form contains the heading "Count Two" followed by the proper statutory definition for the offense of obstructing official business. While charging the jury, the trial court explained each of these counts in relation to the corresponding verdict forms by stating the following:

*Count One.* The Defendant is charged with Failure to Comply with an Order or Signal of a Police Officer. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 20th

day of March, 2018, *in Champaign County, Ohio*, the Defendant operated a motor vehicle so as willfully to elude or fell a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.

* * *

Count Two. The Defendant is charged with Obstructing Official Business. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 20th day of March, 2018, and *in Champaign County, Ohio*, the Defendant, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, did an act that hampered or impeded the public official in the performance of his lawful duties.

* * *

You'll open the Verdict Form Folder and within the verdict forms there are two sheets of paper. *One sheet of paper is for Count One. One sheet of paper is for Count Two. Each document has the same case caption at the top. Meaning, * * * one is labeled Count One and the other is labeled Count Two.*

(Emphasis added.) Trial Tr. Vol. II, p. 487, 490, and 493.

{¶ 14} When reading the foregoing jury instructions along with the language found in the verdict forms, it is clear that by indicating Shutway was guilty on the verdict forms the jury had found that Shutway committed the offenses at issue in Champaign County, Ohio. *See Shedwick*, 10th Dist. Franklin No. 11AP-709, 2012-Ohio-2270, at ¶ 43-44

(finding no plain error with respect to venue in a jury verdict form where the language in the verdict form specified that the jury found appellant guilty of each count as it was charged in the indictment and where the jury instructions provided that in order to find the appellant guilty of the charged offenses the jurors must find beyond a reasonable doubt that the offenses were committed in Franklin County, Ohio). Therefore, Shutway's claim that the jury verdict forms did not provide the jury's finding as to venue lacks merit.

{¶ 15} Shutway's first assignment of error is overruled.


**Second Assignment of Error**

{¶ 16} Under his second assignment of error, Shutway contends that the trial court erred by permitting the State to present the failure to comply and obstructing official business charges to a grand jury before a preliminary hearing was completed for the charges in the Champaign County Municipal Court. According to Shutway, holding a grand jury proceeding before the conclusion of the preliminary hearing in municipal court violated Crim.R. 5(B)(8) and rendered the common pleas court without jurisdiction over the matter. We disagree.

{¶ 17} Shutway's preliminary hearing for the municipal court charges was scheduled to take place on March 22, 2018. The preliminary hearing was then continued to March 29, 2018, at Shutway's request. The day of the preliminary hearing, Shutway appeared and moved to disqualify the municipal court judge presiding over the matter. In response to this request, the judge explained what would happen if he disqualified himself and stated the following:

COURT: Ok. So I would have to call the Supreme Court, and they

would appoint somebody to come down here and do that.* * *
When they appoint one, then you would have a preliminary hearing if you can still have a preliminary hearing on that matter. In between now and then, you could go to the grand jury, and then you wouldn't even be in this court. Do you understand all that?

SHUTWAY: Yes, Your Honor.

COURT: Is that what you want me to do?

SHUTWAY: Your Honor, Yes.

Hearing Tr. (Mar. 29, 2018), p. 6.

{¶ 18} Four days later, a Champaign County grand jury indicted Shutway for the offenses at issue. The case pending against Shutway in municipal court was then dismissed. The matter then proceeded to an arraignment hearing in the Champaign County Court of Common Pleas. During that hearing, Shutway argued that the common pleas court lacked jurisdiction over the matter due to the preliminary hearing not having been completed in municipal court. The common pleas court judge disagreed and stated as follows:

I believe [the municipal court case] was dismissed prior to a preliminary hearing. And as you may know, in Ohio you can go with a direct indictment with a Grand Jury indictment. Which I believe is what happened in this case. * * *

Correct. [The preliminary hearing] was continued. * * *

I am just going to say that the recollection of what shows on the

municipal court website is that you were before Judge Weithman on the 29th of March. And that was set for a preliminary hearing. And at that time, you asked Judge Weithman to recuse himself, which he did. And, therefore, the preliminary hearing was continued. But prior to that preliminary hearing taking place this indictment was returned and, therefore, the municipal court proceedings were moot.

Hearing Tr. (May 10, 2018), p. 5-6.

{¶ 19} The aforementioned statement by the common pleas court was correct. Crim.R. 5(B)(1) specifically provides that: "The preliminary hearing shall not be held, * * * if the defendant is indicted." In addition, the Supreme Court of Ohio has explained that "once an indictment has been returned by the grand jury a preliminary hearing before a magistrate is no longer necessary." *State v. Minamyer,* 12 Ohio St.2d 67, 232 N.E.2d 401 (1967), paragraph one of the syllabus. *Accord State v. Garland*, 2d Dist. Darke No. 933, 1976 WL 190412, *1 (Jan. 20, 1976) ("if indicted, a preliminary hearing is no longer necessary"); *State v. Kinney*, 4th Dist. Ross No. 96CA2176, 1996 WL 571394, *2 (Oct. 3, 1996) ("there is no constitutional right to a preliminary hearing once an indictment has been returned against a defendant since a probable cause determination has already been made by the grand jury"); *State v. Jackson*, 8th Dist. Cuyahoga Nos. 62671, 62672, 1993 WL 462879, *6 (Nov. 10, 1993) (the return of a grand jury indictment extinguishes any right to a preliminary hearing). "[N]o rights or defenses are lost for failure to hold a preliminary hearing." *State v. Leach*, 9th Dist. Summit No. 22369, 2005-Ohio-2569, ¶ 30, citing *White v. Maxwell*, 174 Ohio St. 186, 188, 187 N.E.2d 878 (1963). (Other citations omitted.) Therefore, Shutway incorrectly claims that a preliminary hearing on the

municipal court charges was required before he could be indicted in the common pleas court.

{¶ 20} We also note that Shutway's claim that the trial court violated Crim.R. 5(B)(8) lacks merit. Crim. R. 5(B)(8) provides that:

A municipal or county court retains jurisdiction on a felony case *following the preliminary hearing, or a waiver thereof*, until such time as a record of the appearance, docket entries, and other matters required for transmittal are filed with the clerk of the court in which the defendant is to appear.

(Emphasis added.) By its terms, Crim.R. 5(B)(8) concerns the retention of a municipal court's jurisdiction *after* a preliminary hearing has been held or *after* the waiver of a preliminary hearing. Since Shutway was indicted prior to a preliminary hearing being held or waived in municipal court, Crim.R. 5(B)(8) was inapplicable and does not support Shutway's assignment of error.

{¶ 21} Although it does not pertain to his assigned error, Shutway also argues that the trial court imposed excessive bail in violation of his constitutional rights under the Eighth and Fourteenth Amendments. The record indicates that the trial court initially imposed a $25,000 bail bond following Shutway's indictment. Five days later, the trial court modified Shutway's bond to a personal recognizance bond. Shutway claims that the personal recognizance bond imposed by the trial court was excessive because he had previously bonded himself out of jail after the municipal court imposed a $15,000 bond for the same offenses. As a result, Shutway claims that he was improperly subjected to a second bond.

{¶ 22} Shutway provides no case law supporting his excessive bail claim. Furthermore, "[t]he proper remedy for excessive bail is habeas corpus, not [an] appeal from the defendant's conviction." *State v. Smith*, 5th Dist. Muskingum No. CT2019-0005, 2019-Ohio-4645, ¶ 27. *See also Chari v. Vore*, 91 Ohio St.3d 323, 325, 744 N.E.2d 763 (2001) ("Habeas corpus is the proper remedy to raise the claim of excessive bail in pretrial-release cases."); *In re DeFronzo*, 49 Ohio St.2d 271, 273, 361 N.E.2d 448 (1977) ("It is well established that habeas corpus is the proper remedy to raise the claim of excessive bail."); *State v. Foster*, 10th Dist. Franklin No. 08AP-523, 2008-Ohio-3525, ¶ 5 ("Customarily, challenges to excessive bond are reviewed under an abuse of discretion standard by means of an original action in habeas corpus."). This court has held that "[a]fter conviction, any error concerning pretrial bail is moot, and this issue may not be raised on direct appeal from a conviction." *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 25, citing *State v. Towns*, 8th Dist. Cuyahoga No. 88059, 2007-Ohio-529, ¶ 20. Therefore, Shutway's excessive bail claim is moot and was not properly raised in this appeal.

{¶ 23} In addition to excessive bail, Shutway further argues that he was prejudiced by his alleged inability to challenge the array of grand jurors due to his counsel's absence at the grand jury proceedings. Shutway claims that the State had a duty to notify his counsel that the matter was being brought to the grand jury.

{¶ 24} Shutway once again provides no authority to support his claim. It has been held that there is no obligation on the part of government counsel to notify the defendant's counsel that the defendant was subpoenaed before the grand jury. *United States v. Levinson*, 405 F.2d 971, 980 (6th Cir.1968). Furthermore, "the Sixth Amendment right

to counsel does not attach when an individual is summoned to appear before a grand jury, even if he is the subject of the investigation." *United States v. Williams*, 504 U.S. 36, 49, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), citing *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). *Accord United States v. Taylor*, S.D.Ohio No. 2:12-CR-218, 2013 WL 3270381, *1 (June 26, 2013), quoting *Mandujano* at 581 ("Since the Sixth Amendment right to counsel does not attach until an indictment, * * * a Grand Jury witness " 'cannot insist, as a matter of Constitutional right, on being represented by his counsel.' "); *State ex rel. Ramos v. White*, 9th Dist. Lorain No. 96CA006511, 1997 WL 72091, *2 (Feb. 7, 1997) ("there is no right to counsel at a grand jury proceeding"). Moreover, pursuant to Crim.R. 6(B)(2), Shutway could have filed a motion to dismiss the indictment based on objections to the array of grand jurors, but he failed to do so. Therefore, Shutway's claim that he was unable to challenge the array of grand jurors lacks merit.

{¶ 25} Finally, Shutway also raised a claim of selective prosecution. Specifically, Shutway claims that the State engaged in selective prosecution because it did not prosecute him for the underlying speeding charge that arose in Clark County. We fail to see how this amounts to selective prosecution. A selective-prosecution claim is an independent assertion that the prosecutor has brought a charge for reasons forbidden by the Constitution, such as race, religion, or another arbitrary classification. *See State v. Getsy*, 84 Ohio St.3d 180, 203, 702 N.E.2d 866 (1998), citing *United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 531, 709 N.E.2d 1148 (1999). The fact that the State chose not to prosecute an offense that occurred in another jurisdiction does not amount to selective

prosecution or any other error that Shutway may be claiming in this appeal.

{¶ 26} For all the foregoing reasons, Shutway's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 27} Under his third assignment of error, Shutway contends that the State committed prosecutorial misconduct by withholding certain discovery in violation of Crim.R. 16(A). Specifically, Shutway claims that the State withheld a Use of Force Report prepared by law enforcement and an audio recording from the Clark County 9-1-1 Dispatch Center. According to Shutway, these items contained exculpatory evidence and could have been used to impeach two of the State's witnesses. Shutway's claim fails for multiple reasons.

{¶ 28} "The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether that conduct prejudicially affected substantial rights of the accused." *State v. St. John*, 2d Dist. Montgomery No. 27988, 2019-Ohio-650, ¶ 109, citing *State v. Martin*, 2d Dist. Montgomery No. 22744, 2009-Ohio-5303, ¶ 15. Allegations of prosecutorial misconduct related to violations of Crim.R. 16 "result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 131, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983); *State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995).

{¶ 29} With regard to the Use of Force Report, the record indicates that on July 26,

2018, Shutway issued a subpoena to the Champaign County Sheriff's Office for purposes of obtaining the Use of Force Report and other items that were not included in the State's discovery packet. Trial Tr. Vol. II, p. 367. Shutway claimed that an officer from the sheriff's office advised him that there was no Use of Force Report and that the officer directed him to Tremont City. *Id.* at 374. Shutway indicated that he was thereafter able to obtain a Use of Force Report from the Tremont City Police Department. *Id.*

{¶ 30} At trial, the prosecutor for the State explained that when he learned of Shutway's subpoena, he went to the sheriff's office to express his concern that Shutway had improperly used a subpoena to request public records. *Id.* at 349. The prosecutor claimed that in the interest of fairness, he instructed the sheriff's office to provide him with the requested documentation so that he could deliver it to Shutway. *Id.* The record indicates that on July 30, 2018, the day before trial, the prosecutor obtained two Use of Force Reports prepared by Deputy Prickett and Deputy Fenwick as well as a Taser Use Report. *See* State's Exhibit No. 7. The record indicates that the prosecutor then e-mailed this documentation to Shutway the same day it was received. *Id.* The prosecutor advised the trial court that he had no knowledge of the Use of Force Report that Shutway allegedly obtained from Tremont City. Trial Trans Vol. II, p. 376.

{¶ 31} Shutway admitted on the record, as well as in his brief, that he received the Champaign County Use of Force Reports from the prosecutor the day before his trial. *Id.* at 378-379. He also clarified on the record that he was able to obtain the Tremont City Use of Force Report prior to trial. Although it is unclear from Shutway's brief which Use of Force Report he is referring to, even if we were to assume that the prosecutor willfully withheld all the Use of Force Reports discussed herein, Shutway cannot establish

that the reports would have aided his defense or that he was prejudiced by the delay in receiving the reports. This is because the trial court held, and we agree, that the information contained in the reports was irrelevant since Shutway's actions constituting the offenses of failure to comply and obstructing official business were already completed by the time the officers had to use force against him. *Id.* at 371-373, 378-379. Furthermore, because Shutway received the Use of Force Reports prior to trial, he could have moved for a trial continuance based on the late disclosure. Had he done so, any prejudice that Shutway believes he sustained from the delay in receiving the documents could have been cured. *See State v. Williams*, 9th Dist. Summit No. 23176, 2007-Ohio-622, ¶ 19.

{¶ 32} We next turn to the audio recording from the Clark County 9-1-1 Dispatch Center. Shutway claims that the State provided him with dispatch audio recordings from Champaign County's 9-1-1 dispatch center, but never provided him with dispatch audio recordings from Clark County's 9-1-1 dispatch center. The State maintains that it never received the Clark County audio recordings, and thus was unable to provide them to Shutway. Shutway asserts that the Clark County audio recordings were exculpatory in that they established that Officer Duncan: (1) was in Champaign County when he first made radio contact with the dispatcher; (2) never requested assistance from the Champaign County Sheriff's Office; and (3) never stated to the dispatcher that a Champaign County Sheriff's vehicle was forced off the road or that a Champaign County officer was outside his vehicle. Even if we assume that the foregoing information was provided in the Clark County audio recordings (as they are not part of the record on appeal), we fail to see how any of this information was exculpatory or how it might have

changed the outcome of Shutway's trial.

{¶ 33} More importantly, the record establishes that Shutway obtained the Clark County audio recordings prior to his trial. Specifically, the record establishes that Shutway subpoenaed the Clark County audio recordings from the Tremont City Police Department, and that the department's police chief, Greg Nelson, delivered the requested audio recordings to Shutway the day before his trial. *See* Notice of Affidavit in Support of State's Opposition to Defendant's Request for New Trial: Affidavit of Greg Nelson (Oct. 12, 2018). In his affidavit, Chief Nelson specifically averred that he obtained the audio recordings from the Clark County Sheriff's Office and delivered the recordings to Shutway on July 30, 2018. *Id.* Because Shutway had the opportunity to review the Clark County audio recordings prior to trial, he could have used the information on the recordings to formulate his defense strategy, or, at the very least, he could have requested a trial continuance. Therefore, we do not find that Shutway was prejudiced by the State's failure to provide him with the Clark County audio recordings.

{¶ 34} Shutway's third assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 35} Under his fourth assignment of error, Shutway contends that his indictment was void and did not confer jurisdiction on the trial court because it was not signed by the grand-jury foreperson. We disagree.

{¶ 36} Crim.R. 6(C) outlines the duties of a grand-jury foreperson, and it requires the foreperson to "sign all indictments." R.C. 2939.20 also requires the grand-jury foreperson to sign the indictment, as well as indorse the indictment with the words "A true

bill." This court has stated that " '[a] multiple-count indictment containing the words "a true bill" and signed by the foreperson of the grand jury is sufficient when the entire indictment is provided to the defendant, notwithstanding that each count of the indictment is not separately signed by the foreperson.' " *State v. Bray*, 2d Dist. Clark No. 2010-CA-14, 2011-Ohio-4660, ¶ 54, quoting *State v. Ballow*, 9th Dist. Medina No. 2527-M, 1996 WL 365020, *3 (July 3, 1996). This court has also found that "[t]here is no requirement in the Criminal Rules or the Revised Code that the grand jury foreperson sign every page and/or count in a multiple count indictment." *Id*.

{¶ 37} In this case, the record establishes that the indictment in question was comprised of three pages. The first two pages included a description of the two indicted charges and specifications followed by the prosecutor's signature. The third page of the indictment was the "Summary of Indictment" that included the grand-jury foreperson's signature under the heading "A True Bill."

{¶ 38} The "Summary of Indictment" included the following statement beneath the grand-jury foreperson's signature: "This Bill of Indictment found upon testimony Sworn and sent before the Grand Jury at the Request of the Prosecuting Attorney." This statement indicated that the document to which the foreperson's signature was affixed was part of the indictment. Because the "Summary of Indictment" was part of Shutway's indictment, and because it contained the grand-jury foreperson's signature with the words "A True Bill" indorsed on it, the indictment was compliant with Crim.R. 6(C) and R.C. 2939.20. Therefore, contrary to Shutway's claim otherwise, the indictment was not defective and does not warrant the reversal of his conviction.

{¶ 39} Shutway's fourth assignment of error is overruled.

## Conclusion

**{¶ 40}** Having overruled all four assignments of error raised by Shutway, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Jane A. Napier
John Anthony Shutway
Hon. Nick A. Selvaggio